**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DIVISION OF FLORIDA
TAMPA DIVISION**

BABY BUDDIES, INC., a Florida
Corporation,

      Plaintiff,

v.

TOYS "R" US, INC., a Delaware
Corporation, TOYS "R" US-
DELAWARE, INC., a Delaware
Corporation, and GEOFFREY, INC.,
a Delaware Corporation,

      Defendants,

Case No.: 8:03-CV-1377-T-17-MSS

## PLAINTIFF BABY BUDDIES, INC'S NOTICE OF APPEAL

Notice is hereby given that Plaintiff Baby Buddies, Inc. ("Plaintiff"), hereby appeals to the United States Court of Appeals for the Eleventh Circuit from the Final Judgment of Summary Judgment as to Counts I and II entered by this court in the above captioned proceeding on the 13th day of November, 2008 (Dkt. 97), which includes and subsumes: (1) the order of this court entered in the above captioned proceeding on the 3rd day of October, 2008 (Dkt. 85); (2) the order of this court entered in the above captioned proceeding on the 26th day of March, 2006 (Dkt. 71); and (3) the endorsed order of this court denying motion to amend/correct and denying motion for reconsideration entered in the above captioned proceeding on the 3rd day of October, 2008 (Dkt. 88).  Copies of these orders are attached hereto.

Respectfully submitted this 11th day of December, 2008.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 11, 2008 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Charles F. Ketchey, Jr., Trenam Kemker, P.O. Box 1102, Tampa, Florida 33601, and that a copy of the foregoing document was mailed by first-class mail to the following non-CM/ECF participants:

Robert Weisbein, Esq.
FOLEY & LARDNER, LLP
90 Park Avenue
New York, New York 10016

/s/  Joseph J. Weissman
Frank R. Jakes          FBN 0372226
Joseph J. Weissman    FBN 0041424
JOHNSON, POPE, BOKOR, RUPPEL
   & BURNS, LLP.
P.O. Box 1100
Tampa, FL 33601-1100
Phone: (813) 225-2500;
Facsimile: (813) 223-7118
Counsel for Plaintiff

#124233

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BABY BUDDIES, INC.,
a Florida Corporation,

        Plaintiff,

v.                      CASE NO. 8:03-CV-1377-T-17MAP

TOYS "R" US, INC., a
Delaware Corporation,
TOYS "R" US-DELAWARE,
INC., a Delaware
Corporation,
and GEOFFREY, INC.,
a Delaware Corporation,

        Defendants.

_____/

## FINAL JUDGMENT

The Court has granted the Motion for Summary Judgment of
Defendants TOYS "R" US, INC., TOYS "R" US-DELAWARE, INC. and
GEOFFREY, INC., as to Count I (copyright infringement) and Count
II (Sec. 817.41, <u>Florida Statutes</u> (2002))(Dkt. 85), and stayed
this case as to Count III.  There being no just reason for delay,
it is

**ORDERED** that Plaintiff BABY BUDDIES, INC. recover nothing as
to Count I and Count II, and Defendants recover costs from
Plaintiff.

Dated: _November 13th, 2008._

ELIZABETH A. KOVACHEVICH
United States District Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BABY BUDDIES, INC., etc.,

                Plaintiffs,

v.                                      CASE NO. 8:03-CV-1377-T-17MSS

TOYS "R" US, INC., etc.,
et al.,

                Defendants.

_____/


ORDER

This cause is before the Court on:

            Dkt. 37 Motion for Summary Judgment
            Dkt. 38 Statement of Uncontested Facts
            Dkt. 46 Notice
            Dkt. 54 Statement of Disputed Facts
            Dkt. 55 Response
            Dkt. 56 Memorandum
            Dkt. 57 Notice, with Exhibits
            Dkt. 58 Notice
            Dkt. 60 Notice, Declaration
            Dkt. 61 Notice, Declaration


This case includes the following claims: 1) Count I -
Copyright Infringement; 2) Count II - Violation of Fla. Stat.
Sec. 817.41, Misleading Advertising; and 3) Count III - Common
Law Unfair Competition.  In the Complaint, Plaintiff seeks a
preliminary and permanent injunction, impoundment of the "knock-
off" items, actual damages and profits or statutory damages as to
Count I, actual damages as to Counts II and III, punitive damages
as to Counts II and III, and attorney's fees and costs.

Case No. 8:03-CV-1377-T-17MSS

The Court regrets the long delay in the disposition of this pending motion, which was due to the demands of the Court's criminal docket.

I.   Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 ©). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden can be discharged if the moving party can show the Court that there is "an absence of evidence to support the nonmoving party's case." Id. at 323, 325, 106 S.Ct. 2548. When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. Id. at 324, 106 S.Ct. 2548.

Issues of fact are "'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those that will affect the outcome of the trial under governing law. Id. at 248, 106 S.Ct. 2505. In determining whether a material fact exists, the court must consider all the evidence in the light

2

Case No. 8:03-CV-1377-T-17MSS

most favorable to the nonmoving party.  <u>Sweat v. Miller Brewing</u>
<u>Co., Inc.</u>, 708 F.2d 655 (11th Cir. 1983).  All doubt as to the
existence of a genuine issue of material fact must be resolved
against the moving party.  <u>Hayden v. First Natl. Bank of Mt.</u>
<u>Pleasant</u>, 595 F.2d 994, 996-997 (5th Cir. 1979).  The court may
not weigh the credibility of the parties on summary judgment.
<u>Rollins v. Techsouth, Inc.</u>, 833 F.2d 1525, 1531 (11th Cir. 1987).
If the determination of the case rests on which competing version
of the facts or events is true, the case should be submitted to
the trier of fact. <i>Id.</i>

     In this circuit, non-infringement may be determined as a
matter of law on a motion for summary judgment, either because
the similarity between the two works concerns only non-
copyrightable elements of the plaintiff's work, or because no
reasonable jury, properly instructed, could find that the two
works are substantially similar.  <u>Herzog v. Castle Rock</u>
<u>Entertainment</u>, 193 F.3d 1241, 1247 (11th Cir. 1997).

II.  Statement of Facts

     The Court has attached Defendant's Statement of Uncontested
Facts and Plaintiff's Statement of Contested Facts to this Order.

III.  Discussion

A.  Count I - Infringement Claims

     To establish copyright infringement, two elements must be
proven: 1) ownership of a valid copyright; and 2) copying of

3

Case No. 8:03-CV-1377-T-17MSS

constituent elements of the work that are original. <u>Feist</u>
<u>Publications v. Rural Tel. Serv. Co.,</u> 499 U.S. 340, 361 (1999).
If the plaintiff does not have direct proof of copying, the
plaintiff may show copying by demonstrating that defendants had
access to the copyrighted work, and the works are substantially
similar. <u>Herzog</u>, 193 F.3d at 1248.

    The Eleventh Circuit Court of Appeals defines "substantial
similarity" as existing "where an average lay observer would
recognize the alleged copy as having been appropriated from the
copyrighted work." <u>Original Appalachian Artworks, Inc. v. Toy</u>
<u>Loft, Inc.</u>, 684 F.2d 821, 829 (11th Cir. 1982). Not all copying
constitutes infringement; the analysis of substantial similarity
"must focus on similarity of expression, i.e. material
susceptible of copyright protection." <u>Leigh v. Warner Bros.,</u>
<u>Inc.</u>, 212 F.3d 1210 (11th Cir. 2000). In an action for copyright
infringement, the Court must determine whether the similarities
between the works are substantial from the point of view of a lay
observer, and whether the similarities involve copyrightable
material. <u>Herzog</u>, 193 F.3d at 1248.

    The approach set out in <u>Herzog</u>, <u>supra</u>, involves applying the
"extrinsic test" and the "intrinsic test":

> In Herzog, we approved a district court opinion that framed this
> analysis as a two-part inquiry similar to that established by the
> Ninth Circuit in Sid & Marty Krofft Television Productions, Inc. v.
> McDonald's Corp., 562 F.2d 1157 (9th Cir.1977), and its progeny.
> That approach involves "extrinsic" and "intrinsic" tests, which the
> court in Herzog described as follows: Under the extrinsic test, a
> court will inquire into whether, as an objective matter, the works

4

Case No. 8:03-CV-1377-T-17MSS

> are substantially similar in protected expression. As a part of this
> test, a court will determine whether a plaintiff seeks to protect only
> uncopyrightable elements; if so, the court will grant summary
> judgment for defendant. Under the extrinsic test, expert testimony
> and analytic dissection are appropriate. Under the intrinsic test, a
> court will determine whether, upon proper instruction, a reasonable
> jury would find that the works are substantially similar. A court
> may grant summary judgment for defendant as a matter of law if
> the similarity between the two works concerns only
> noncopyrightable elements of the plaintiff's work or if no
> reasonable jury would find that the two works are substantially
> similar.

"In identifying the protected elements of a plaintiff's
work, the Court must be mindful of the fundamental axiom that
copyright protection does not extend to ideas but only to
particular expressions of ideas. See 17 U.S.C. Sec. 102(b)."
Oravec v. Sunny Isles Ventures, L.C., 537 F.3d 1218, 1224 (11th
Cir. 2008). There is no bright line test for the idea/expression
dichotomy which separates the ideas conveyed by the work from the
expression of the work.

The purpose of this dichotomy is to "achieve the proper
balance between competing societal interests: that of
encouraging the creation of original works on one hand and that
of promoting the free flow of ideas and information on the other.
[I]n defining protectable expression, the court should 'neither
draw the line so narrowly that authors, composers and artists
will have no incentive to produce original literary, musical and
artistic works, nor [should the court] draw it so broadly that
future authors, composers and artists will find a diminished
store of ideas on which to build their works.'" Id.

Case No. 8:03-CV-1377-T-17MSS

An additional limitation on the scope of copyright
protection, in the context of substantial similarity, is that
copyright protection extends only to the artistic aspects, but
not the mechanical or utilitarian features, of a protected work.
Mazer v. Stein, 347 U.S. 201, 218 (1954).  This distinction is
embodied in the definition of pictorial, graphic and sculptural
works in the Copyright Act:

> Such works shall include works of artistic
> craftsmanship insofar as their form but not
> their mechanical or utilitarian aspects are
> concerned; the design of a useful article, as
> defined in this section, shall be considered
> a pictorial, graphic or sculptural work only
> if, and only to the extent that, such design
> incorporates pictorial, graphic, or
> sculptural features that can be identified
> separately from, and are capable of existing
> independently of, the utilitarian aspects of
> the article.

17 U.S.C. Sec. 101.  In copyright actions, similarity of idea or
function must be distinguished from similarity of artistic
expression.  Durham Industries, Inc. v. Tomy Corp., 630 F.2d 905,
913 (2nd Cir. 1980).

B.  Valid Copyright

There are two copyrights at issue in this case.  For the
purposes of infringement analysis in Defendant's Motion for
Summary Judgment only, Defendant concedes that the copyrights are
valid.

6

Case No. 8:03-CV-1377-T-17MSS

C. Copying

As to access to the first Baby Buddies pacifier holder, Plaintiff concedes that Defendants had no access.  Defendants never stocked that item, and it was sold in only limited quantities to small independent stores. (Dkt. 57, Deposition Phil Krause at 61, l. 7-14).  Therefore, in order to survive a motion for summary judgment as to infringement of the copyright granted as to the first Baby Buddies pacifier, Plaintiff must establish the "striking similarity" between the protectable elements of the first Baby Buddies pacifier holder and Defendants' pacifier holder.  <u>Calhoun v. Lillenas Publishing</u> 298 F.3d 1228, 1232 (11th Cir. 2002).  A showing of "striking similarity" requires that Plaintiff show that the similarity between the two works is so great that it precludes the possibility of coincidence, independent creation, or common source.  <u>Benson v. Coca-Cola Co.</u>, 795 F.2d 973, 975, n. 2 (11th Cir. 1986).

The testimony of Plaintiff, as well as the Michaud report, establishes the complete lack of striking similarity between the first Baby Buddies pacifier holder and Defendants' pacifier holder.  After viewing the two works as a whole, the Court finds that the similarity between the two works does not meet the "striking similarity" requirement.  Therefore, Plaintiff cannot establish copying as to the first copyright at issue.

As to access to the second Baby Buddies' pacifier holder, Defendants concede that Defendants had access.  Therefore, the Court must determine whether there is substantial similarity of the protectable elements.

7

Case No. 8:03-CV-1377-T-17MSS

The bear and bow pacifier holder was copyrighted as a
sculptural work.  Under 17 U.S.C. Sec. 101, the definition of
pictorial, graphic and sculptural works includes:

> "[T]wo-dimensional and three-dimensional
> works of fine, graphic and applied art,
> photographs, prints and art reproductions,
> maps, globes, charts, diagrams, models, and
> technical drawings, including architectural
> plans.  Such works shall include works of
> artistic craftsmanship insofar as their form
> but not their mechanical and utilitarian
> aspects are concerned; the design of a useful
> article as defined in this section, shall be
> considered a pictorial, graphic or sculptural
> work only if, and only to the extent that,
> such design incorporates pictorial, graphic
> or sculptural features that can be identified
> separately from, and are capable of existing
> independently of, the utilitarian aspects of
> the article.

The pacifier holder is a "useful article."  A "useful article" is
an article having an intrinsic utilitarian function that is not
merely to portray the appearance of the article or to convey
information.  What Plaintiff copyrighted was the artistic
elements of the article.  Plaintiff has urged that the Court
apply the "total look and feel" test to the work, but the Court
cannot apply the test to elements that are not protectable.

Plaintiff has asserted that the artistic elements of the
bear and bow pacifier holder include the bear, as well as the
color-coordinated bow covering the clip, and the ribbon tether.
The tether is a functional element, and the color of the tether
is not an element that can be separated from it.  The Court
therefore finds that the tether cannot be a protectable element.

8

Case No. 8:03-CV-1377-T-17MSS

The clip is a functional element, and the bow can be separated from it.  After consideration, the Court finds that the bow which is attached to the clip is an element that is too generic to be a protectable element.  The Court finds that the bear is the sculptural work that is protected by Plaintiff's copyright.

D.   Comparison of Works

The Court has examined the two works at issue.  (Dkt. 46, Dkt. 43, Michaud Report, Exhs. 17-26, 28, 29).  The Court identifies Plaintiff's work as the "BB pacifier holder" and Defendant's work as the "TRU pacifier holder."

Both works are white bears which have a glossy finish.  The TRU pacifier holder is larger in scale than the BB pacifier holder.  The overall expression on the bear faces is different. The eyes of the TRU pacifier holder are close together and a different color than the BB pacifier holder.   The ears of the TRU pacifier holder have a colored interior area, and the ears of the BB pacifier holder are all white.  The nose of the TRU pacifier holder is larger than the eyes of the TRU pacifier holder; the nose of the BB pacifier holder is the same size as the eyes of the BB pacifier.  The mouth of the TRU pacifier holder is a closed, wide smile; the mouth of the BB pacifier holder is an open smile under a split upper snout.  The upper paws of the TRU pacifier holder are marked with four colored pads showing the bottom side of the paw; the upper paws of the BB pacifier holder are turned over and all white, showing the top side of the paw.  The center of the TRU pacifier holder is marked with a red heart; the center of the BB pacifier holder is all

Case No. 8:03-CV-1377-T-17MSS

white.  The bottom paws of the TRU pacifier holder are marked
with four colored pads showing the bottom of the paws; the bottom
paws of the BB pacifier holder show one red pad and three white
toes.

There is some similarity between the two works, because both
are white bears.  However, an ordinary observer would not
recognize any protectable element of the TRU pacifier holder as
appropriated from the BB pacifier holder.  After consideration,
the Court finds that there is no substantial similarity of the
protectable elements.  The Court therefore grants summary
judgment to Defendant as to Count I of the Complaint.

E.  Count II - Misleading Advertising

Plaintiff's claim is based on Sec. 817.41, Florida Statutes
(2002).  In Count II, Plaintiff contends that Defendants have
disseminated or caused to be disseminated within the State of
Florida misleading advertisement falsely or deceptively
suggesting that Geoffrey, Inc. is the authority, originator, and
copyright owner of the bear and bow pacifier holder design, when,
in fact, Plaintiff Baby Buddies is the author, originator and
owner of the copyright.

Defendants argue that, in order to establish a violation of
Sec. 817.41, Fla. Stat., Plaintiff must prove reliance on the
alleged misleading advertising as well as the other elements of
common law fraud in the inducement, such as detriment.  Smith v.
Mellon Bank, 956 F.2d 856, 857-8 (11th Cir. 1992).

Case No. 8:03-CV-1377-T-17MSS


Defendants further argue that the packaging of the TRU pacifier holder contains no reference to the BB pacifier holder, and any oral representations made during telephone conversations do not meet the statutory requirements for "misleading advertising."

Plaintiff responds that the misleading advertising is the copyright symbol that Defendants placed on both versions of their product packaging.  Plaintiff argues that Defendants falsely advertised that they are the author and owner of the design of Defendants' product, and that reliance is not an necessarily an element of the statutory claim when the plaintiff is a competitor rather than a consumer.  Plaintiff argues that a jury issue exists as to whether Defendants' use of the copyright symbol on the packaging for Defendants' product would be likely deceive a reasonable person that the product design was owned and authored by Defendants.

The Court notes that "misleading advertising" includes:

> 5) The phrase "misleading advertising" includes any statements made, or disseminated, in oral, written, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services.

Sec. 817.40, Fla. Stat.

Case No. 8:03-CV-1377-T-17MSS


    The Court determined that the design of Defendants' pacifier
holder does not infringe the copyright of the design of
Plaintiff's pacifier holder.  The Court notes that Defendants
have presented evidence as to the independent creation of
Defendants' design, which the Court has found is not
substantially similar to Plaintiff's design in its protectable
elements.  Copyright protection commences at the time a design is
created, although registration may be obtained later.  Therefore,
there is no factual issue as to whether affixing the copyright
symbol to Defendants' packaging would be likely to deceive a
reasonable person that Defendants' product design was owned and
authored by Defendants.   Defendants did not create misleading
advertising by attaching the copyright symbol to Defendants'
packaging.

    After consideration, the Court grants Defendants'  Motion
for Summary Judgment as to this issue.


F.  Counterclaim for Invalidity of Copyright

    Defendants' Motion for Leave to File a Counterclaim was
filed after Defendants moved for summary judgment, and after the
conclusion of discovery.  Plaintiff opposed Defendants' Motion.
The Court denied leave to file the Counterclaim (Dkt. 71).
Therefore, the Court will not address Defendants' Motion for
Summary Judgment as to the Counterclaim for invalidity.
Accordingly, it is

Case No. 8:03-CV-1377-T-17MSS


    **ORDERED** that Defendants' Motion for Summary Judgment is **granted** as to Counts I and II.  The Motion for Summary Judgment is **denied** without prejudice as to invalidity.


    **DONE and ORDERED** in Chambers, in Tampa, Florida on this 3rd day of October, 2008.

ELIZABETH A. KOVACHEVICH
United States District Judge


Copies to:
All parties and counsel of record

Case 8:03-cv-01377-EAK-MAP   Document 98   Filed 12/11/08   Page 17 of 36

Case 8:03-cv-01377-EAK-MAP   Document 85   Filed 10/03/2008   Page 14 of 27
Case 8:03-cv-01377-EAK-MSS   Document 38   Filed 07/29/2004   Page 1 of 8

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BABY BUDDIES, INC., a Florida Corporation,

    Plaintiff,

              Case No. 8:03-CV-1377-T-17MSS

v.

TOYS "R" US, INC., a Delaware Corporation,
TOYS "R" US-DELAWARE, INC.,
a Delaware Corporation, and        JURY TRIAL DEMANDED
GEOFFREY, INC., a Delaware Corporation,

    Defendants.
_____/

## DEFENDANTS' STATEMENT OF UNCONTESTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

   Defendants submit this Statement of Uncontested Facts in Support of Defendants'

Motion for Summary Judgment.

   1.   In 1985, Darlene Krause purchased an off-the shelf plastic teddy bear from a

local craft store. D. Krause Dep. at 28:18-19.

   2.   Ms. Krause then attached a ribbon and metal clip to the teddy bear to create a

pacifier holder. The metal clip was used to secure her child's pacifier to her clothes. The

pacifier itself was attached to the ribbon tether which was affixed to the plastic teddy bear.

D. Krause Dep. at 26:24 - 27:7, 30:5-10; P. Krause Dep. at 54:21 - 55:4.

   3.   The combination described in Paragraphs 1 and 2 comprises the First Baby

Buddies Teddy Bear Pacifier Holder. D. Krause Dep. at 28:18-19, 26:24 - 27:7, 30:5-10; P.

Krause Dep. at 54:21 - 55:4.

{TP146314;1}

Case 8:03-cv-01377-EAK-MAP   Document 98   Filed 12/11/08   Page 18 of 36

Case 8:03-cv-01377-EAK-MAP   Document 85   Filed 10/03/2008   Page 15 of 27
Case 8:03-cv-01377-EAK-MSS   Document 38   Filed 07/29/2004   Page 2 of 8

4.      In 1985, Ms. Krause began purchasing the plastic craft teddy bears included in the First Baby Buddies Teddy Bear Pacifier Holder in bulk from a distributor in China.  D. Krause Dep. at 29:18-20; P. Krause Dep. at 55:18-20.

5.      Baby Buddies was founded in 1986 by Phil and Darlene Krause.  P. Krause Dep. at 29:2-3, 30:20 - 31:4.

6.      Copyright Registration VA 284-559 was granted for the First Baby Buddies Teddy Bear Pacifier Holder on September 14, 1987, approximately two years after its creation.  Complaint at Ex. 1.

7.      Darlene Krause failed to inform the Copyright Office that the First Baby Buddies Teddy Bear Pacifier Holder was a derivative work based on an underlying third party teddy bear.  Complaint at Ex. 1, § 6.

8.      Darlene Krause described the nature of her authorship in the copyright application for the First Copyright as "artwork" and titled the work "Baby Buddy Bear and Bow Ribbon Clip."  Complaint at Ex 1, §§ 2, 1.

9.      In 1988, Baby Buddies decided to design its own plastic teddy bear.  P. Krause Dep. at 58:19 - 59:5.

10.     In 1988, Baby Buddies engaged Aesthetic Models and Molds, Ltd. to design the Second Baby Buddies Teddy Bear Pacifier Holder.  P. Krause Dep. at 62:25 - 63:3.

11.     Cheryl Fraser, an employee of Aesthetic Models and Molds, Ltd., designed the actual teddy bear utilized in the Second Baby Buddies Teddy Bear Pacifier Holder without assistance from Darlene Krause.  C. Fraser Dep. 15:11-14, 17:2-4, 10:2-12, 12:3-7.

12.     Copyright Registration VA 566-600 was granted on the Second Baby Buddies

Case 8:03-cv-01377-EAK-MAP   Document 98   Filed 12/11/08   Page 19 of 36
Case 8:03-cv-01377-EAK-MAP   Document 85   Filed 10/03/2008   Page 16 of 27
Case 8:03-cv-01377-EAK-MSS   Document 38   Filed 07/29/2004   Page 3 of 8

Teddy Bear Pacifier Holder on May 22, 1991, three years after the work was created. Complaint at Ex. 2.

13.     Sometime in or around 1997, Toys "R" Us ("Toys") purchased the Baby Superstore chain and discontinued the sale of all Baby Buddies products, including the Second Baby Buddies Teddy Bear Pacifier Holder. P. Krause Dep. at 97:20 - 98:2.

14.     Sometime in 1997, Toys decided to begin selling the Second Baby Buddies Teddy Bear Pacifier Holder again and began selling it in its Toys' and Babies "R" Us stores. P. Krause Dep. at 98:5-10; Complaint at ¶ 21.

15.     In or around 1997 or 1998, Toys decided to rebrand its TOYS "R" US line of private label baby products under the ESPECIALLY FOR BABY trademark. Costello Dep. at 38:2-6.

16.     Since 2000, Toys has introduced approximately fifty baby accessory products under its ESPECIALLY FOR BABY label. Costello Dep. at 42:20 - 43:2.

17.     In 1999, Toys engaged Design Innovations Inc. ("DSI") to develop a line of pacifier holders under its ESPECIALLY FOR BABY label. Popek Dep. at 20:1-14.

18.     The ESPECIALLY FOR BABY line of Pacifier Holders designed by DSI consists of pacifier holders in a bear, duck, and bunny design. P. Krause Dep. at 178:25 - 179:3.

19.     Baby Buddies first became aware of the ESPECIALLY FOR BABY Teddy Bear Pacifier Holder in late 2000. BB0147.

20.     In the spring of 2002, Toys discontinued the sale of the Second Baby Buddies Teddy Bear Pacifier Holder in its Toys "R" Us stores. Costello Dep. at 155:20-22.

Case 8:03-cv-01377-EAK-MAP    Document 98    Filed 12/11/08    Page 20 of 36

Case 8:03-cv-01377-EAK-MAP    Document 85    Filed 10/03/2008    Page 17 of 27
Case 8:03-cv-01377-EAK-MSS    Document 38    Filed 07/29/2004    Page 4 of 8

21.    On July 1, 2003, Baby Buddies brought this action charging Toys with, *inter alia*, copyright infringement of its First and Second Teddy Bear Pacifier Holders based on Toys' sale of the ESPECIALLY FOR BABY Teddy Bear Pacifier Holder. Complaint at ¶¶ 30-37.

22.    The ESPECIALLY FOR BABY private label was created in 1997 as a way to promote sales of various baby products then being sold under the TOYS "R" US trademark in Toys' stores. Costello Dep. at 41:9-12.

23.    The creation of the ESPECIALLY FOR BABY Teddy Bear Pacifier Holder in 1999 was part of a larger effort to expand the entire ESPECIALLY FOR BABY line. Costello Dep. at 213: 4-12.

24.    In 1999, Toys contacted DSI, a company specializing in design development for the toy and juvenile product industry, and requested that it develop concepts for its new line of pacifier holders. Popek Dep. at 21:7-17.

25.    DSI in turn contracted this work out to an independent graphic designer. Popek Dep. at 28:24 - 29:8.

26.    The independent designer subsequently drafted concept sketches for the ESPECIALLY FOR BABY pacifier holder line in the design of an angel, bear, bunny, duck, dog and balloons. Popek Dep. at Ex. 15.

27.    Each of these six drawings was submitted to Toys. Popek Dep. at 69:19 - 70:4.

28.    During the development of the ESPECIALLY FOR BABY line of pacifier holders, Toys did provide a photocopy of the Second Baby Buddies Teddy Bear Pacifier

Case 8:03-cv-01377-EAK-MAP   Document 98   Filed 12/11/08   Page 21 of 36

Case 8:03-cv-01377-EAK-MAP   Document 85   Filed 10/03/2008   Page 18 of 27
Case 8:03-cv-01377-EAK-MSS   Document 38   Filed 07/29/2004   Page 5 of 8

Holder to DSI.  Popek Dep. at 72:23 - 73:2.

29.      DSI believes that it provided a copy of the photocopy referenced in Paragraph

28 to the independent designer although it is not entirely certain it did so.  Popek Dep. 27:2-

4.

30.      The details of the mouth, upper paws, toes, muzzle or dimensions of the

Second Baby Buddies Teddy Bear Pacifier Holder are not clearly shown in the photocopy

referenced in Paragraph 28.  Popek Dep. at 73:19-22.

31.      Toys provided a sample of the Second Baby Buddies Teddy Bear Pacifier

Holder to TRU(HK) Limited, a Hong Kong company that acts as a private label sourcing and

development company for Toys, and asked it to try to either locate a similar teddy bear on the

open market or develop one itself.  TRU000017, TRU000064 - TRU000067.

32.      Toys had no access to the First Baby Buddies Teddy Bear Pacifier Holder as it

was never sold to Toys, its affiliate Babies "R" Us, or Baby Superstore.  P. Krause Dep. at

61:7-14.

33.      All teddy bears contain a set of basic anatomic features which include a head,

ears, a nose, a mouth and cheeks, and a torso with arms and legs.  Report of Terry & Doris

Michaud at p. 8.

34.      The teddy bears of the ESPECIALLY FOR BABY Teddy Bear Pacifier

Holder and the Second Baby Buddies Teddy Bear Pacifier holder are of completely different

designs.  Report of Terry & Doris Michaud at p. 14.

35.      The ESPECIALLY FOR BABY Teddy Bear Pacifier Holder is of the Fantasy

Design and the Second Baby Buddies Teddy Bear Pacifier Holder is of the Classic Design.

{TP146314;1}                                    5

Case 8:03-cv-01377-EAK-MAP   Document 98   Filed 12/11/08   Page 22 of 36

Case 8:03-cv-01377-EAK-MAP   Document 85   Filed 10/03/2008   Page 19 of 27
Case 8:03-cv-01377-EAK-MSS   Document 38   Filed 07/29/2004   Page 6 of 8

Report of Terry & Doris Michaud at p. 9-13.

36.      The only design similarities shared by the teddy bears of the ESPECIALLY FOR BABY Teddy Bear Pacifier Holder and the Second Baby Buddies Teddy Bear Pacifier holder is that they both contain the basic anatomical stereotypical features found in virtually all teddy bears and are both mainly colored white.  Report of Terry & Doris Michaud at p. 13.

37.      Baby Buddies admits that the ears, cheeks, muzzle, nose, belly, upper paws and lower paws of the teddy bear in the Second Baby Buddies Teddy Bear Pacifier Holder are different than the corresponding features in the ESPECIALLY FOR BABY Teddy Bear Pacifier Holder.  D. Krause Dep. at 75:16 - 77:14.

38.      Baby Buddies admits that the ears, cheeks, nose, muzzle, mouth, belly, upper paws and lower paws of the teddy bear of the First Baby Buddies Teddy Bear Pacifier Holder are different than those of the ESPECIALLY FOR BABY Teddy Bear Pacifier Holder.  D. Krause Dep. at 71:19 - 73:20.

39.      Baby Buddies admits that the teddy bear of the ESPECIALLY FOR BABY Teddy Bear Pacifier Holder creates a different overall look than the First Baby Buddies Teddy Bear Pacifier Holder.  D. Krause Dep. at 73:21-24.

40.      Cheryl Fraser testified that the teddy bear of the ESPECIALLY FOR BABY Teddy Bear Pacifier Holder and the teddy bear of the Second Baby Buddies Teddy Bear Pacifier Holder look like completely different bears.  C. Fraser Dep. at 23:6-13.

41.      Baby Buddies believes that the First Copyright protects a pacifier holder that is constructed with a bear and a bow in a similar position and design as the First Baby

Case 8:03-cv-01377-EAK-MAP  Document 98  Filed 12/11/08  Page 23 of 36

Case 8:03-cv-01377-EAK-MAP   Document 85   Filed 10/03/2008   Page 20 of 27
Case 8:03-cv-01377-EAK-MSS   Document 38   Filed 07/29/2004   Page 7 of 8

Buddies Teddy Bear Pacifier Holder. P. Krause Dep. at 69:14-16.

42.     Baby Buddies believes that the ESPECIALLY FOR BABY Teddy Bear Pacifier Holder infringes the First Copyright because the First Copyright is for a bear and a bow and the ESPECIALLY FOR BABY Teddy Bear Pacifier includes a teddy bear and a bow. D. Krause Dep. at 71:4-5.

43.     Phil Krause has never seen a Toys' advertisement for the ESPECIALLY FOR BABY Teddy Bear Pacifier Holder. P. Krause Dep. 152:24 - 153:11.

44.     Baby Buddies believes that Toys' display of the ESPECIALLY FOR BABY Teddy Bear Pacifier Holder, in its own packaging, is a form of false advertising. P. Krause Dep. at 153:12-16.

Respectfully submitted,

s/ Wesley D. Tibbals
Leslie Joughin, III
Fla. Bar No. 339385
Wesley D. Tibbals
Fla. Bar No. 0163880
AKERMAN SENTERFITT
Post Office Box 3273
Tampa, Florida 33601-3273
Tel:    (813) 223-7333
Local Counsel

and

Paul Fields, Esq.
Robert S. Weisbein, Esq.
Justin M. Kayal
DARBY & DARBY P.C.
805 Third Avenue
New York, New York 10022
Tel: (212) 527-7700
Trial Counsel

{TP146314;1}                            7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DIVISION OF FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| BABY BUDDIES, INC., a Florida Corporation, | |
| Plaintiff, | Case No.: 8:03-CV-1377-T-17- MSS |
| v. | |
| TOYS "R" US, INC., a Delaware Corporation, TOYS "R" US-DELAWARE, INC., a Delaware Corporation, and GEOFFREY, INC., a Delaware Corporation, | |
| Defendants, | |

## PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Baby Buddies, Inc. ("Baby Buddies"), by and through its undersigned counsel, submits this Statement of Disputed Facts in Opposition to Defendants' Motion for Summary Judgment:

(1)     In 1985, Darlene Krause was a new mother in search of an aesthetically pleasing and economical pacifier holder for her daughter. D. Krause Decl., ¶ 2.

(2)     Ms. Krause discovered that only available pacifier holder was unattractive and too expensive. D. Krause Decl., ¶ 3.

(3)     Ms Krause then embarked on creating her own pacifier holder design. She affixed a metal clip to an existing three-dimensional, fuzzy craft store bear, created a decorative bow that was color coordinated to a ribbon that served as the tether securing the baby's pacifier.  The decorative bow and ribbon tether were integral parts of Ms.

1

Krause's design as they allowed the user to choose the color ribbon (e.g., red, blue, pink, mint green) to coordinate with the baby's clothing/gender. D. Krause Decl., ¶ 4.

(4)    Although Ms. Krause originally designed her pacifier holder solely for her personal use, she received innumerable compliments on the design along with requests from family, friends, church members and others for their own copy of Ms. Krause's pacifier holder. D. Krause Decl., ¶ 5.

(5)    Based upon this positive reaction and apparent consumer demand, Ms. Krause and her husband, Phil Krause, formed Baby Buddies in 1986 to manufacture, distribute and sell Ms. Krause's bear and bow pacifier holder. P. Krause Dep. 29:2-3, 30: & 31:4.

(6)    Consumer demand and the interest of juvenile products retailers in Ms. Krause bear and bow pacifier holder was immediate and substantial. P. Krause Decl., ¶ 2.

(7)    To protect the bear and bow pacifier holder design, the law firm of Frijouf, Rust & Pyle, P.A. of Tampa, Florida was engaged to prepare and file a copyright registration application in September 1987. The Copyright Office granted Ms. Krause's Copyright Registration No. VA 284 559 on September 14, 1987. Complaint at Ex. 1.

(8)    Ms. Krause never claimed to have authored or created the pre-existing fuzzy craft store bear component as part of Copyright Registration No. VA 284 559. Rather, Ms. Krause claimed authorship of the totality of all components of her bear and bow pacifier holder design. Complaint at Ex. 1; D. Krause Decl., ¶ 6.

(9)    With the continued success of the bear and bow pacifier holder, Baby Buddies made a decision in 1988 to modify its bear and bow pacifier holder design by creating a molded plastic, painted, three-dimensional bear-clip assembly. Among the

purposes of this modification was a desire to lower costs, improve manufacturing efficiency, create an improved aesthetic bear design and render the resulting product more hygienic. P. Krause Dep. 58:19 – 59:5; P. Krause Decl., ¶ 3.

(10)    To assist in the modification, Baby Buddies engaged Aesthetic Models and Molds, Ltd. to help create the design of the mold for the modified plastic, three dimensional bear clip component. P. Krause Dep. at 62:25 – 63:3.

(11)    Ms. Krause participated in and conceptualized the aesthetic design for the modified three dimensional plastic bear clip component. D. Krause Dep. at 31:13 – 39:13.

(12)    To further protect Baby Buddies' rights in the modified bear and bow pacifier holder design, Baby Buddies engaged the law firm of Pettis & McDonald, P.A. to prepare and submit a copyright registration application on its behalf. On May 22, 1991, the Copyright Office granted Baby Buddies Copyright Registration No. VA 566 600 for its modified bear and bow pacifier holder design. Complaint at Ex. 2.

(13)    Some time in or around 1997, Defendants began to purchase from Baby Buddies its modified bear and bow pacifier holder. P. Krause Dep. at 98:5 – 10.

(14)    Since 1986, Baby Buddies has sold over a million units of its copyrighted bear and bow pacifier holder. P. Krause Decl., ¶ 4.

(15)    Apart from Defendants, Baby Buddies has also sold its copyrighted bear and bow pacifier holder to such retailers as Target, Eckerds and various other specialized juvenile products retailers. P. Krause Dep. at 39:13 – 15; 41:13 – 15; 42:16 – 19.

(16)    Without informing Baby Buddies, in 1999, Defendants decided to develop their own private label pacifier holder product line to be marketed and sold under

3

Defendants' ESPECIALLY FOR BABY label.  C. Christensen Dep. at ___.  [Ms. Christensen's deposition was conducted on August 11, 2004 in Oradell, New Jersey.  The transcript is forthcoming and will be filed with the Court in a supplemental filing.]

(17)   At the very beginning of product development for Defendants' private label pacifier holder product line, Defendants' buyer, Carol Christensen, provided Defendants' product development analyst, Iris Panganiban (now Schaer), with a sample of Baby Buddies' copyrighted modified bear and bow pacifier holder.  Schaer Dep. 27:16 – 28:7; 47:14 – 19; 50:10-13; 56:3-14.

(18)   Although Defendants carried other manufacturers' pacifier holders in its Toys 'R Us and Babies 'R Us stores, Christensen did not give Panganiban any samples of any other manufacturers' pacifier holder products.  Schaer Dep. 34:12 – 15.

(19)   Christensen asked Panganiban to "source" Baby Buddies' copyrighted bear and bow pacifier holder to find out whether it was available on the open market.  Schaer Dep. 27:16 – 28:7; 30: 20-31:4.

(20)   Panganiban then forwarded a sample of Baby Buddies' copyrighted modified bear and bow pacifier holder to Defendants' affiliated Chinese supplier, TRU (HK), Ltd. In transmitting the copyrighted Baby Buddies modified bear and bow pacifier holder to Defendants' affiliated Hong Kong, she wrote: "the buyer likes the design and would like to see if we could find something of similar quality and style.  If not, how much would it cost to produce one of our own design?"  Schaer Dep. Ex. 1; 31:21-32:18; 32:24-33:16; 39:24-41:19 & Ex. 3.

(21)   Ten days later, Panganiban told TRU (HK), Ltd. that "[t]he sample I sent is for reference only.  We will probably want to do our design or find something in the

4

open market that is very close in look to the one I sent." Schaer Dep. 41:20-42:5 & Ex. 3.

(22)    To facilitate the design of Defendants' private label pacifier holder, Defendants' engaged an independent design firm, Design Innovations, Inc., to prepare conceptual and control drawings for the products. To guide this design process at Design Innovations, Inc., Panganiban again forwarded a copy of the copyrighted Baby Buddies modified bear and bow pacifier holder with the instruction: "the buyer likes this bear but I do not want to produce the same exact thing. Can you please work on a similar design." Popek Dep. 25:2 – 28:4; 60:5 – 61:8 & Ex. 5.

(23)    Design Innovations, Inc., in turn, engaged a design subcontractor and provided her with the copyrighted Baby Buddies' modified bear and bow pacifier holder for purposes of creating the conceptual drawings. Popek Dep. 28:17 – 29:13; 33:17 – 21.

(24)    After Design Innovations, Inc. and its subcontracted designer prepared initial conceptual drawings for the accused product, Panganiban revised the nose/snout and mouth on the bear to make the nose/snout and mouth look more like the copyrighted Baby Buddies modified pacifier holder. Popek Dep. 34:5 – 10; 36:18 – 37:4; 38:2 – 5; 38:16 – 39:12; 44:17 – 46:4 & Ex. S. 7 – 9 & 14; Schaer Dep. 63:6 – 21; 65:17 – 67:8 & Ex. S. 11.

(25)    The similarity between Defendants' accused bear and bow pacifier holder and the copyrighted Baby Buddies modified bear and bow pacifier holder is so pronounced that Defendants' themselves are confused. Defendants have sent open/ defective/customer-returned copies of their own bear and bow pacifier holder to Baby

5

Buddies seeking a credit from Baby Buddies on future orders. P. Krause Dep. 245:12 –
247:23; 248:4 – 16; 250:12 – 14.

(26)   On at least one other occasion, Defendants have confused the respective
products. In this instance, a customer who had purchased Defendants' bear and bow
pacifier holder called to complain when it fell apart in her baby's mouth. When she
asked Defendants for information regarding the manufacture of the product, she was
mistakenly directed to Baby Buddies even though the product in question was
Defendants' accused pacifier holder. Only after shipping the defective product to Baby
Buddies' did the consumer learn that the product was, in fact, Defendants' accused
pacifier holder. Gardner Dep. 5:8 – 18; 6:13 – 19; 7:3 – 8:7; 8:25 – 10:23; 14; 15:13 –
16:7.

(27)   Both Darlene and Phil Krause have compared Defendants' accused
pacifier holder with the copyrighted Baby Buddies modified bear and bow pacifier holder
and believe that the products are substantially similar. D. Krause Decl., ¶ 7;   P. Krause
Decl., ¶ 5.

(28)   In the Spring of 2002, Defendants discontinued the sale of the copyrighted
Baby Buddies modified bear and bow pacifier holder in its Toys 'R Us stores. Beginning
2003, Defendants discontinued the sale of the copyrighted Baby Buddies modified bear
and bow pacifier holder in its Babies 'R Us stores. P. Krause Decl., ¶ 6.

(29)   Christensen, Defendants' buyer who initiated the development of the
accused pacifier holder product line, admits that Defendants' bear and bow pacifier
holder is more similar to the copyrighted Baby Buddies modified bear and bow pacifier
holder than to any of the other pacifier holder products carried by Defendants. C.

6

Christensen Dep. at _____ .[Christensen's deposition was conducted on August 11, 2004 in Oradell, NJ. Her deposition transcript is forthcoming and will be filed with the Court in a supplemental filing].

(30)   Apart from Defendants, no other manufacturer of pacifier holders utilizes a sculpted, plastic three dimensional bear-clip assembly in conjunction with a decorative bow that is color coordinated with a ribbon tether. P. Krause Decl., ¶ 7.

(31)   Apart from Defendants, no other manufacturer of pacifier holders utilizes a decorative bow which is color coordinated with a ribbon tether. P. Krause Decl., ¶ 8.

(32)   After Defendants began selling their private label pacifier holders, Defendants began to position the copyrighted Baby Buddies modified bear and bow pacifier holder products in disadvantageous shelf locations in Defendants' Toys 'R Us and Babies 'R Us stores. On some occasions, the copyrighted Baby Buddies modified bear and bow pacifier holder was obscured from view of the customer by other large items offered for sale by Defendants. P. Krause Dep. at 130:3 – 22; 131:19 – 132:1.

(33)   The copyrighted Baby Buddies modified bear and bow pacifier holder is Baby Buddies' flag ship product and the product with which juvenile retailers, specifically, and the consuming public in general identifies as coming from Baby Buddies. P. Krause Decl., ¶ 9.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 16, 2004, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Leslie Joughin, Esq., AKERMAN SENTERFITT,
Wesley Tibbals, Esq., AKERMAN SENTERFITT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BABY BUDDIES, INC.,
a Florida corporation,

       Plaintiff,

v.                    CASE NO.   8:03-CV-1377-T-17MSS

TOYS "R" US, INC.,
etc., et al.,

       Defendants.

_____/

ORDER

    This cause is before the Court on the following pending
Motions.

Dkt. 15 Motion for leave to Amend
Dkt. 17 Opposition
Dkt. 27 Reply

    Plaintiff requests leave to amend the Complaint to add Toys
"R" Us (HK) Ltd. as a defendant in this copyright infringement
case.  Plaintiff alleges that TRU(HK) is the manufacturer of the
allegedly infringing products that have been shipped into the
United States, and may be liable as a contributor to Defendants'
copyright infringement.

    Defendants oppose amendment because the amendment would be
futile, as the Court would have no personal jurisdiction over
Defendant, a Hong Kong Corporation.

    In the Reply, Plaintiff responds that Plaintiff has made a
prima facie showing of personal jurisdiction, and any challenge
to personal jurisdiction at this time is premature.

Case No. 8:03-CV-1377-T-17MSS

     The Court notes that Plaintiff did file the Motion to Amend
at an early stage, and it has remained pending ever since.
Ordinarily, the Court would grant the Motion to Amend.  However,
now a dispositive motion is pending, and the addition of a
defendant would necessitate the reopening of discovery and
further delay in this already delayed case.  The Court will
therefore deny the Motion to Amend.

Dkt. 23 Motion for Leave to File Sur-Reply

     Since the Court has denied the Motion to Amend, the Court
denies the Motion for Leave as moot.

Dkt. 34 Motion for Leave to File Excess Pages

     Defendants seek leave to file a dispositive motion in excess
of 20 pages.  After consideration, the Court grants the Motion.

Dkt. 40 Motion for Leave to Amend/Correct Answer and File
Counterclaim
Dkt. 47 Opposition

     Defendant seeks leave to add defenses based on information
learned through discovery, as well as to add a counterclaim.
Defendant argues that additional discovery is not required.

     Plaintiff opposes the Motion.  Plaintiff argues that
Defendants cannot show good cause under Rule 16(b) because
Defendants were not diligent in seeking leave to amend.

                              2

Case No. 8:03-CV-1377-T-17MSS

The Court notes that the request to file an amended Answer
and Counterclaim was filed after the discovery cutoff and on the
date that dispositive motions were due.  Since the Court has
denied Plaintiff's request for leave to amend the Complaint to
avoid further delay in this case, the Court will also deny the
Motion for Leave to Amend Answer and Add Counterclaim.

Dkt. 55 Motion to Strike Report on Terry and Diane Michaud
Dkt. 59 Response in Opposition

Plaintiff has filed a <u>Daubert</u> Motion as to the expert report
of the Michauds (Dkt. 43).  Plaintiff argues that exclusion is
required by <u>Daubert</u> and Rule 702 because the Michauds are not
competent to testify as experts, their methodology is unreliable,
their expert opinion is irrelevant, and the report is unsworn.

Defendants respond that the Michaud Report should be
admitted in support of Defendants' Motion for Summary Judgment.
Defendants argue that the Michauds are qualified by experience
and specialized knowledge, their conclusions are reliable, the
testimony is relevant, and the challenges that have been raised
go to the evidentiary weight of the report rather than its
admissibility.  Defendants also argue that the report can be
sworn to through supplementation.

After consideration, the Court denies the Motion to Strike.
The Court agrees that the challenges to the Report go to its
weight rather than to its admissibility.

3

Case No. 8:03-CV-1377-T-17MSS

Dkt. 62 Motion to Strike Late-Filed Declarations
Dkt. 67 Response

After consideration, the Court denies the Motion to Strike
as the Declarations are merely corrective.

Dkt. 63 Motion to Exclude Late-Identified Witnesses and Documents
Dkt. 68 Opposition

Plaintiff requests exclusion of late-identified witnesses
and documents, arguing that the disclosures are late, the late
disclosure is not substantially justified, and is not a harmless
error.

Defendants respond that Defendants have fulfilled their
discovery obligations, its supplementations have been timely, the
supplementations are substantially justified, and there is no
prejudice to Plaintiff.

After consideration, the Court denies the Motion to Exclude.

4

Case No. 8:03-CV-1377-T-17MSS

   DONE and ORDERED in Chambers, in Tampa, Florida on this
3/5 day of March, 2006.

                          ELIZABETH A. KOVACHEVICH
                          United States District Judge

Copies to:
All parties and counsel of record

5

**Patti F. Todd**

| | |
|---|---|
| **From:** | cmecf_flmd_notification@flmd.uscourts.gov |
| **Sent:** | Friday, October 03, 2008 4:30 PM |
| **To:** | cmecf_flmd_notices@flmd.uscourts.gov |
| **Subject:** | Activity in Case 8:03-cv-01377-EAK-MAP Baby Buddies, Inc. v. Toys "R" Us, Inc., et al Order on motion to amend/correct |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### Middle District of Florida

**Notice of Electronic Filing**

The following transaction was entered on 10/3/2008 at 4:29 PM EDT and filed on 10/3/2008
**Case Name:**      Baby Buddies, Inc. v. Toys R Us, Inc., et al
**Case Number:**    8:03-cv-1377
**Filer:**
**Document Number:** 88(No document attached)

**Docket Text:**
**ENDORSED ORDER denying [73] motion to amend/correct; denying [73] Motion for reconsideration. Signed by Judge Elizabeth A. Kovachevich on 10/3/2008. (JM)**

**8:03-cv-1377 Notice has been electronically mailed to:**

Charles Franklin Ketchey, Jr cketchey@trenam.com, svulliet@trenam.com

Frank R. Jakes frankj@jpfirm.com, pattit@jpfirm.com

Wesley D. Tibbals wesley.tibbals@akerman.com, caren.collier@akerman.com

**8:03-cv-1377 Notice has been delivered by other means to:**

10/6/2008