# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia  30303

John Ley
Clerk of the Court

For rules and forms visit
www.ca11.uscourts.gov

August 20, 2010

Sheryl L. Loesch
Clerk, U.S. District Court
801 N FLORIDA AVE RM 220
TAMPA  FL  33602-3849

**Appeal Number: 08-17021-HH**
Case Style: Baby Buddies, Inc.  v. Toys "R" Us, Inc.
District Court Number:  03-01377 CV-T-17-MSS

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's decision,</u> is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

John Ley, Clerk of Court

Reply To: James O. Delaney (404) 335-6113

Encl.



MDT-1 (06/2006)

# United States Court of Appeals

## For the Eleventh Circuit

No. 08-17021

_____

District Court Docket No.
03-01377-CV-T-17-MSS

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Jul 22, 2010

JOHN LEY
CLERK
```

BABY BUDDIES, INC.,
a Florida corporation,

                     Plaintiff-Counter-
                     Defendant-Appellant,

versus

TOYS "R" US, INC.,
a Delaware corporation,
TOYS "R" US - DELAWARE, INC.,
a Delaware corporation,
GEOFFREY, INC.,
a Delaware corporation,

                     Defendants-Counter-
                     Claimants-Appellees.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By:_____
          Deputy Clerk
          Atlanta, Georgia

-------------------------------------------------------------

Appeal from the United States District Court
for the Middle District of Florida

-------------------------------------------------------------

## JUDGMENT

    It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

                              Entered:   July 22, 2010
                         For the Court:   John Ley, Clerk
                             By:   Patch, Jeffrey

ISSUED AS MANDATE
AUG 2 0 2010
U.S. COURT OF APPEALS
ATLANTA GA

## CORRECTED

[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 22, 2010
JOHN LEY
CLERK

No. 08-17021

D. C. Docket No. 03-01377-CV-T-17-MSS

BABY BUDDIES, INC.,
a Florida corporation,

Plaintiff-Counter-
Defendant-Appellant,

versus

TOYS "R" US, INC.,
a Delaware corporation,
TOYS "R" US - DELAWARE, INC.,
a Delaware corporation,
GEOFFREY, INC.,
a Delaware corporation,

Defendants-Counter-
Claimants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

(July 22, 2010)

Before DUBINA, Chief Judge, TJOFLAT, Circuit Judge, and BOWEN,* District Judge.

TJOFLAT, Circuit Judge:

This appeal involves a copyright dispute between Baby Buddies, Inc. ("Baby Buddies") and Toys "R" Us, Inc. ("Toys R Us"). Baby Buddies sued Toys R Us in federal district court, alleging that Toys R Us's pacifier holder infringed Baby Buddies's copyright in its own similar pacifier holder. After discovery, Toys R Us moved for summary judgment. The district court granted the motion for summary judgment and dismissed Baby Buddies's claims. Baby Buddies appeals that judgment, and we affirm.

I.

A.

In 1985, Darlene Krause ("Krause") tried to find a pacifier holder for her new baby. A pacifier holder is a device that can be attached to a baby's clothing and has a short tether that can be connected to a pacifier. If the baby drops the pacifier, the tether prevents it from falling to the ground and becoming dirty or lost. Krause found the available pacifier holders unattractive, so she made her own: she bought a small, fuzzy bear resembling a teddy bear from a craft store,

---

* Honorable Dudley H. Bowen, Jr., United States District Judge for the Southern District of Georgia, sitting by designation.

2

affixed a clip to it, attached a colorful ribbon as a tether, and added a matching ribbon bow for decoration. The homemade pacifier holder proved so popular with friends that Krause and her husband formed Baby Buddies, Inc. in 1986 to produce and sell the pacifier holder. The following year, Krause applied for and received a copyright registration for her design.[1] Krause assigned all rights in her copyrighted work to Baby Buddies.

A year later, Baby Buddies employed a design and molding firm to redesign the pacifier holder using a molded plastic bear. The redesigned bear made the pacifier holder cheaper to manufacture, easier to assemble, easier to clean, and more aesthetically pleasing. This pacifier holder features a white, plastic bear still resembling a child's teddy bear. The bear is approximately one-and-one-quarter inches tall and is seated with its lower paws facing out and its upper paws facing inward and resting on its stomach. The bear has sharply defined features, with its toes, muzzle, and mouth clearly delineated. A bow made of textured, aquamarine-colored ribbon[2] attaches to the back of the bear. The bow has two loops on the top and two loose ends of the ribbon on the bottom that form a flattened "X" shape behind the bear's head and torso. The same ribbon is used to make a several-

---

[1] Krause's design was registered as number VA 384 559 on September 14, 1987.

[2] Aquamarine is a combination of light green and cyan. The color descriptions in this opinion are the court's own observations.

3

inches-long tether with a snap on the end that allows it to be looped through a hole

in the baby's pacifier. The tether extends downward from the bottom of the bear.

A metal clip is attached to the back of the bear.[3]  Baby Buddies's rights in this

second pacifier holder form the basis of this appeal, and we refer to this second

design as the "Baby Buddies pacifier holder" and to the plastic bear featured in this

design as the "Baby Buddies bear." In 1991, Baby Buddies registered this second

design with the United States Copyright Office.[4]

Sometime around 1997, Toys R Us began carrying the Baby Buddies's

pacifier holder. The pacifier holder sold well—Baby Buddies has sold more than a

million units, with more than half a million of those sales coming through Toys R

Us.

By 1999, though, Toys R Us had decided to produce and market its own

pacifier holder under its private label, "Especially for Baby." Toys R Us had its

product development department attempt to buy the Baby Buddies pacifier holder

on the open market. When that effort proved unsuccessful, Toys R Us enlisted a

consultant to design several different pacifier holders, including a teddy bear

---

[3] This pacifier holder is described in more detail in part III.B.1, infra. An image of this pacifier holder is attached to this opinion as Appendix A.

[4] Specifically, the registration form listed Krause and a woman named Cheryle Fraser as co-authors of the work and stated that both co-authors had assigned their rights in the work to Baby Buddies on the same day the registration was submitted. This work received registration number VA 566 600 on May 22, 1991.

pacifier holder. The design consultant in turn engaged a subcontractor. At some

point, the consultant sent the subcontractor a copy of the Baby Buddies pacifier

holder and a note saying in part, "I need a new animal design. The buyer likes this

bear but I do not want to produce the same exact thing. Can you please work on a

similar design?" The subcontractor responded with designs for a pacifier holder

featuring a bear as well as with designs featuring an angel, a duck, a bunny, and

balloons, which the consultant had also apparently requested. After a few

modifications, Toys R Us and its consultant settled on a design for the bear-themed

pacifier holder, among several others.

     The Toys R Us pacifier holder features a one-and-one-half-inch tall molded

plastic bear. The bear is predominantly white with a red heart on its stomach. The

bear is sitting down with its lower paws facing outward and its upper paws also

facing outward and sticking out from each side. Its features are bloated and

cartoonish; it lacks a muzzle and its paws are simple circles with gold dots to

represent its digits. A textured, light mint-green colored ribbon[5] forms a bow

behind the bear. The bow forms a nearly perfect "X" shape, with its upper loops

sticking out from behind the side of the bear's head and its lower loose ends

---

[5] Mint green is a somewhat pale combination of green and cyan. While recognizing the subjective nature of many color names, we note that both pacifier holders' ribbons are shades of bluish green, but the Toys R Us pacifier holder's ribbon is lighter in color than the ribbon on the Baby Buddies pacifier holder.

sticking out below the bear's lower paws.  A separate piece of the same ribbon

forms a several-inch-long tether that extends from the bottom of the bear and has a

snap that lets the tether loop through a hole in the baby's pacifier.[6]  We refer to this

pacifier holder as the Toys R Us pacifier holder and to the bear as the Toys R Us

bear.

Toys R Us sold both pacifier holders for a time, then began phasing out the

Baby Buddies pacifier holder, discontinuing it entirely in 2003.  Baby Buddies

then sued Toys R Us for copyright infringement.

## B.

Baby Buddies filed a three-count complaint against Toys R Us[7] on July 2,

2003, in federal court: Count I alleged that Toys R Us's pacifier holder infringed

Baby Buddies's copyright in its pacifier holder; Count II alleged that Toys R Us

violated Fla. Stat. § 817.41, which prohibits misleading advertising, by claiming to

be the original author and copyright holder of the bear-themed pacifier holder; and

Count III sought relief against Toys R Us under the theory of common law unfair

---

[6] The bear and the pacifier holder are discussed in more detail in part III.B.1, infra.  An image of the pacifier holder is attached to this opinion as Appendix B.

[7] The complaint named three related corporate entities as defendants: Toys "R" Us, Inc., Toys "R" Us-Delaware, Inc., and Geoffrey, Inc.  According to Baby Buddies's complaint, all three entities share office space, employees, and other resources.  We refer to these entities collectively as "Toys R Us."

competition.[8] Baby Buddies sought damages and injunctive relief. Toys R Us's

answer denied liability and asserted several affirmative defenses.

The parties engaged in discovery. Toys R Us enlisted a husband and wife

team of self-professed teddy bear experts, Terry and Doris Michaud, who wrote a

report concluding that the bears featured on its and Baby Buddies's pacifier

holders were not similar.[9] Based on the information obtained through discovery

and the Michauds' expert report, Toys R Us moved for summary judgment

pursuant to Federal Rule of Civil Procedure 56(c) on Counts I and II (the copyright

and state law misleading advertising claims). For purposes of summary judgment

on the issue of copyright infringement only, Toys R Us conceded the validity of

Baby Buddies's copyright in its pacifier holder and conceded that it had access[10] to

---

[8] The district court had jurisdiction over the copyright claim (Count I) pursuant to 28 U.S.C. § 1338(a), which grants federal district courts original jurisdiction over civil actions arising under the federal copyright laws. The district court had supplemental jurisdiction over Baby Buddies's state law claims (Counts II and III) pursuant to 28 U.S.C. § 1367(a).

[9] In the resulting report, the Michauds recounted the history of the teddy bear, the different teddy bear design styles, and the particular features of teddy bears. They used this framework to compare the bears from Toys R Us's and Baby Buddies's pacifier holders, concluding that the bears reflected different teddy bear design styles. The Michauds then compared the various features of the two bears, concluding that the Toys R Us bear was quite dissimilar from the Baby Buddies bear.

[10] The validity of the plaintiff's copyright is an element that must be proven in an infringement action. Moreover, which infringement test applies depends on whether the defendant had access to the plaintiff's work. See infra part III.A.

the pacifier holder.[11]   Along with its motion, Toys R Us submitted deposition

excerpts, documents obtained during discovery, the Michauds' report, and product

samples of both its and Baby Buddies's pacifier holders.[12]

On October 3, 2008, the district court granted Toys R Us's motion for

summary judgment on Counts I and II.  In addressing the copyright infringement

claim, the district court separated the elements of Baby Buddies's pacifier holder

that could be protected under the copyright laws from those elements that could

not.  The court found that the tether was a functional item not subject to copyright

protection and that the color of the tether could not be separated from it.  The court

also found the clip to be a functional item not subject to protection.  The bow,

according to the court, was too generic to merit protection, leaving only the plastic

---

[11]   Toys R Us also sought, in its incorporated memorandum of law, a declaration that
Baby Buddies's copyright on its original pacifier holder design (the fuzzy-bear design)—from
which Toys R Us alleged Baby Buddies derived its second pacifier holder—was invalid. The
day after filing its motion for summary judgment, Toys R Us moved the court for leave to file an
amended answer that included additional affirmative defenses and a counterclaim against Baby
Buddies. The counterclaim sought a declaration that Baby Buddies's copyright over its original
pacifier holder design was invalid. Baby Buddies opposed this motion, and the court, in an order
entered before its summary judgment order, denied Toys R Us leave to amend its complaint and
assert its counterclaim. In its summary judgment order, the district court explained that it would
not address Toys R Us's arguments as to invalidity because it had previously denied leave to
assert that as a counterclaim. Because Toys R Us did not cross-appeal the denial of its motion
for leave to file its counterclaim, we do not address its attempted counterclaim on appeal, even
though Toys R Us hints at the issue in its briefing.

[12]   Baby Buddies moved the court to strike the Michauds' report as inadmissible under
Federal Rule of Evidence 702 and as not relevant to the issue of copyright infringement; the
district court denied Baby Buddies's motion in a later order.

molded bear subject to copyright protection. The court then compared the various features of the two bears, concluding that no genuine issue of material fact existed as to infringement. Because the court concluded that Toys R Us had not infringed Baby Buddies's copyright, it also held that Toys R Us did not engage in misleading advertising under the Florida statute by claiming that it was the creator and owner of the Toys R Us pacifier holder. Accordingly, the district court granted Toys R Us's motion for summary judgment as to Counts I and II.

Following the grant of summary judgment on Counts I and II, the parties jointly moved the district court to enter final judgment as to Counts I and II under Federal Rule of Civil Procedure 54(b) and to stay further proceedings on Count III pending the resolution of Baby Buddies's appeal of the judgment on Counts I and II. Baby Buddies further stipulated that if the court of appeals upheld the district court's dismissal of Counts I and II, it would voluntarily move to dismiss Count III with prejudice. The district court granted the joint motion on November 13, 2008, entering final judgment in favor of Toys R Us on Counts I and II and staying further proceedings on Count III. On December 11, 2008, Baby Buddies filed its notice of appeal of the district court's November 13 judgment as to Counts I and II.[13]

---

[13] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

II.

"We review the district court's grant of summary judgment de novo,

construing all evidence in the light most favorable to the non-moving party.

Summary judgment is only proper when there are no genuine issues of material

fact." Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1214 (11th Cir. 2000) (internal

citation omitted). "An issue of fact is 'genuine' if the record taken as a whole

could lead a rational trier of fact to find for the nonmoving party." Hickson Corp.

v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004).

Baby Buddies argues that summary judgment is generally inappropriate in

most copyright infringement cases because the ultimate issue of infringement turns

nearly entirely on a reasonable juror's comparison of the works in question.  We

have recognized this concern before.  See, e.g., Beal v. Paramount Pictures Corp.,

20 F.3d 454, 459 (11th Cir. 1994) ("Some courts have  observed that summary

judgment is peculiarly inappropriate in copyright infringement cases due to their

inherent subjectivity.").  "'[N]on-infringement may be determined as a matter of

law on a motion for summary judgment, either because the similarity between two

works concerns only non-copyrightable elements of the plaintiff's work, or

because no reasonable jury, properly instructed, could find that the two works are

substantially similar.'" Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d

1218, 1223 (11th Cir. 2008) (quoting Herzog v. Castle Rock Entm't, 193 F.3d

1241, 1247 (11th Cir. 1999) (per curiam)); see also Intervest Constr., Inc. v.

Canterbury Estate Homes, Inc., 554 F.3d 914, 919–21 (11th Cir. 2008) (explaining

that summary judgment is appropriate in copyright infringement cases in which

there are no disputes as to the material facts relating to the protected expression).

In many copyright infringement cases, the issue of infringement is

intertwined with the issue of determining which parts of the work are actually

protected by the copyright—once the court separates out the protectable elements

of a work, it can become clear that no reasonable jury could find the defendant's

work infringing. E.g., Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340,

361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991) (framing the ultimate issue

on appeal as whether "Feist, by taking 1,309 names, towns, and telephone numbers

from Rural's white pages, cop[ied] anything that was 'original' to Rural")

(emphasis added); Intervest Constr., Inc., 554 F.3d at 921 (noting that not all

copying constitutes infringement and that therefore the analysis must focus on only

the protected expression); Leigh, 212 F.3d at 1214 ("[T]he plaintiff also must

establish specifically that the allegedly infringing work is substantially similar to

the plaintiff's work with regard to its protected elements.").

Therefore, we review the grant of summary judgment in this copyright

infringement case just as we would in any other type of action. We ask whether a reasonable jury, properly instructed, could resolve the factual issue—in this case infringement[14]—in favor of Baby Buddies. If we answer "no," then summary judgment is appropriate.

III.

A.

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc., 499 U.S. at 361, 111 S. Ct. at 1296. For purposes of its motion for summary judgment, Toys R Us concedes that Baby Buddies's copyright is valid, leaving only the issue of copying in dispute. A plaintiff may prove copying directly, but because direct evidence of copying is rare a plaintiff may instead rely on indirect proof. Leigh, 212 F.3d at 1214. How the plaintiff uses indirect evidence to prove copying depends on whether the plaintiff can prove that the defendant had access to the copyrighted work. If the plaintiff cannot prove access, the plaintiff must prove that the defendant's work is "strikingly similar" to the plaintiff's work. Corwin v. Walt Disney Co., 475 F.3d 1239, 1253 (11th Cir. 2007) (internal quotation and citation omitted). Alternatively, the plaintiff can

---

[14] We explain this standard in part III.A, infra.

12

prove that the defendant had access to the copyrighted work and that the

defendant's work is "substantially similar" to the copyrighted work. Leigh, 212

F.3d at 1214.  Because Toys R Us concedes that it had access to the Baby Buddies

pacifier holder, this appeal turns on whether the Toys R Us pacifier holder is

substantially similar to the protected elements of the Baby Buddies pacifier holder.

To determine whether an allegedly infringing work is substantially similar to a

copyrighted work, we ask whether "'an average lay observer would recognize the

alleged copy as having been appropriated from the copyrighted work.'" Oravec,

527 F.3d at 1224 (quoting Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,

684 F.2d 821, 829 (11th Cir. 1982) (internal quotation marks omitted in original)).

Toys R Us's concession that Baby Buddies holds a valid copyright does not

answer the question of which elements of the Baby Buddies pacifier holder are

protected under that copyright.  Although copyright protection extends to

"pictorial, graphic, and sculptural works," 17 U.S.C. § 102(a)(5), which "include

two-dimensional and three-dimensional works of fine, graphic, and applied art . . . .

[s]uch works shall include works of artistic craftsmanship insofar as their form but

not their mechanical or utilitarian aspects are concerned."  17 U.S.C. § 101; see

also Mazer v. Stein, 347 U.S. 201, 218, 74 S. Ct. 460, 471, 98 L. Ed. 630 (1954)

(holding, based in part on the persuasive authority of a Copyright Office

13

regulation, that copyright protection does not extend to utilitarian aspects of a work).  The statute elaborates,

> the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. § 101.  Under the statutory definition, "[a] 'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information."  Id.  Thus, a useful article, as a whole, does not receive copyright protection, but any constituent design elements that can be physically or conceptually separated from the underlying article can receive copyright protection.  Chosun Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 328 (2d Cir. 2005) ("[I]f a useful article incorporates a design element that is physically or conceptually separable from the underlying product, the element is eligible for copyright protection."); Norris Indus. v. Int'l Tel. & Tel. Corp., 696 F.2d 918, 923 (11th Cir. 1983) ("[S]eparability encompasses works of art that are either physically severable from the utilitarian article or conceptually severable.").

Additionally, copyright protection extends only to the original elements of expression in a work:  "The mere fact that a work is copyrighted does not mean that every element of the work may be protected.  Originality remains the sine qua

14

non of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author." Feist Publ'ns, Inc., 499 U.S. at 348, 111 S. Ct. at 1289; see also 17 U.S.C. § 102(a) ("Copyright protection subsists . . . in original works of authorship."). Equally fundamentally, "[i]n no case does copyright protection for an original work of authorship extend to any idea."[15] 17 U.S.C. § 102(b); see also Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 556, 105 S. Ct. 2218, 2228, 85 L. Ed. 2d 588 (1985) ("No author may copyright his ideas or the facts he narrates."). Accordingly, we must apply the substantial similarity test to only those elements of the copyrighted work that are actually subject to copyright protection—that is, elements of original expression in the copyrighted work.

In deciding whether the protected elements of two works are substantially similar, we compare the various components of the two works, but are mindful that "lists of similarities are 'inherently subjective and unreliable, particularly where the lists contain random similarities, and many such similarities could be found in very dissimilar works.'" Corwin, 475 F.3d at 1251 (quoting Herzog, 193 F.3d at 1257). At the same time, "[a]nalyzing relatively amorphous characteristics of the

---

[15] This concept, known as the "idea/expression dichotomony," Harper & Row Publishers, Inc., 471 U.S. at 556, 105 S. Ct. at 2228, lets the author profit from his particular expression while ensuring that the author's raw ideas are immediately available for use in the public domain.

[work] as a whole (such as the 'mood' or 'combination of elements') creates a danger of unwittingly extending copyright protection to unoriginal aspects of the work." Leigh, 212 F.3d at 1215. At the most narrow, focused level, two works will almost always be distinguishable, and at the broadest level of abstraction they will almost always appear identical. Thus, although we identify and compare the protected expressive features of the two works, we do so not simply to count the number of similarities and differences, but rather to determine whether the work's protected expression has been copied.

B.

Because this appeal is of an award of summary judgment, we approach the analysis in this case as would a properly instructed jury: focusing on only the elements protected by the copyright laws (that is, setting aside the unoriginal and nonexpressive elements of the Baby Buddies pacifier holder), is the Toys R Us pacifier holder substantially similar to the Baby Buddies pacifier holder?

The Baby Buddies pacifier holder is undoubtedly a useful article as defined by 17 U.S.C. § 101. Although the pacifier holder includes a sculpted teddy bear, the unit serves the "intrinsic utilitarian function" of connecting a baby's pacifier to the baby's clothes. Thus, we start our analysis by determining whether any potentially copyrightable elements are conceptually or physically separable from

16

the utilitarian aspects of the pacifier holder. Both the plastic teddy bear and the ribbon bow are separate pieces attached to the pacifier holder, and removing them leaves the rest of the pacifier holder—the ribbon tether, clip, and snap—intact and functioning correctly. Being physically separable, the bear and the bow are eligible for copyright protection. The ribbon tether, however, serves the utilitarian function of connecting the pacifier to the baby's clothes; removing the ribbon tether renders the article useless as a pacifier holder, so copyright protection does not extend to it. See 17 U.S.C. § 101.[16] Having identified those elements of the Baby Buddies pacifier holder that are potentially subject to copyright protection, we now proceed to determine the scope of that copyright protection and whether the Toys R Us pacifier holder infringes that protection.

1.

We begin with the plastic teddy bears, which are the most prominent features of both pacifier holders. As mentioned, both bears are formed from white,

---

[16] In Kieselstein-Cord v. Accessories by Pearl, Inc., the Second Circuit held that the designs of two ornate designer belt buckles were conceptually separable from the functional elements of the belt and buckle and were thus eligible to receive copyright protection. 632 F.2d 989, 993 (2d Cir. 1980). If the ribbon tether had some potentially protectable but not physically separable elements on it, we would consider whether those elements would be conceptually separable. In this case, though, there are no potentially protectable elements on the ribbon tether—there are, for example, no patterns on the tether other than its uniform aquamarine color, and a "[c]olor by itself is not subject to copyright protection," Boisson v. Banian, Ltd., 273 F.3d 262, 271 (2d. Cir. 2001) (citing 37 C.F.R. § 202.1(a))—so we need not engage in any further analysis.

sculpted plastic. They also share the same basic anatomical features common to all

teddy bears—a head, two ears, two eyes, a nose, a mouth, a torso, two upper paws

(representing the fore paws of a real bear), and two lower paws (representing the

hind paws on a real bear).[17]  But every sculpture of a teddy bear shares these

features simply because these features are what defines a teddy bear.  To protect

this basic combination of features would in effect give Baby Buddies exclusive

rights over the very idea of a plastic sculpted teddy bear, which is expressly

precluded under the copyright laws.  17 U.S.C. § 102(b) ("In no case does

copyright protection . . . extend to any idea."); see also Original Appalachian

Artwork, Inc., 684 F.2d at 825 n.5 ("Neither the idea of a soft-sculpture human-

figure doll, nor the process of soft sculpture is copyrightable.").

The Second Circuit, in a case regarding whether Mattel, Inc. could copyright

a Barbie doll's face, responded to a similar issue in the same way.  That court held

that copyright protection extended only to Mattel, Inc.'s particularized expression

of the youthful female facial features of a Barbie doll, not to the general idea of

including those features on its doll:

---

[17]  Baby Buddies emphasizes that its pacifier holder features a molded plastic depiction of a bear, not a teddy bear.  Although a teddy bear is typically a stuffed doll, a teddy bear can still be portrayed by a sculpture, model, or picture.  Indeed, the average observer would immediately recognize the Baby Buddies pacifier holder as featuring a plastic representation of a teddy bear. For ease, we refer to them accordingly.

Mattel's copyright in a doll visage with an upturned nose, bow lips, and widely spaced eyes will not prevent a competitor from making dolls with upturned noses, bow lips, and widely spaced eyes, even if the competitor has taken the idea from Mattel's example, so long as the competitor has not copied Mattel's particularized expression. An upturned nose, bow lips, and wide eyes are the "idea" of a certain type of doll face. That idea belongs not to Mattel but to the public domain. See Mattel, Inc. v. Azrak-Hamway Int'l, Inc., 724 F.2d 357, 360 (2d Cir. 1983) (creator of a muscle-bound action doll has copyright in "particularized expression [such as] the decision to accentuate certain muscle groups relative to others" even though imitator is free to make dolls expressing same general idea). But Mattel's copyright will protect its own particularized expression of that idea and bar a competitor from copying Mattel's realization of the Barbie features.

Mattel, Inc. v. Goldberger Doll Mfg. Co., 365 F.3d 133, 136 (2d Cir. 2004)

(emphasis added) (alteration in original); accord Original Appalachian Artwork, Inc., 684 F.2d at 829 n.11 ("[Plaintiff's] copyright can only extend to the peculiar expression of the idea embodied in its 'Little People' dolls."). The same principles apply here. Baby Buddies's copyright does not protect the general features of its bear; rather, the copyright protects the particular ways in which those general features or ideas are expressed. Accordingly, we examine the particularized expression of the two bears.

Both bears have two rounded ears with depressions in the center of the ears. If the bears' heads were clockfaces, the ears would be placed at the 1:30 and 10:30 positions on both bears. But, as mentioned, ears are an essential feature for a teddy bear, so there is nothing original in including them, especially in roughly the

19

anatomically correct position on the bear's head.  Nor is there anything original in portraying the concave portion of an ear with a simple depression.  This is a common way to portray ears on a teddy bear (and ears in general), and Baby Buddies cannot use copyright law to obtain exclusive rights over such a depiction. Moreover, there are differences in the ways the ears are portrayed on the bears. The Baby Buddies bear's ears are entirely white, whereas the Toys R Us bear's ears are white with pink centers, and the Toys R Us bear's ears are larger than the Baby Buddies bear's ears.

The bears' faces are likewise different in their expressive features—although both have dots representing eyes and a nose and a sculpted mouth, those features in and of themselves are not protected because they too are necessary to convey the very idea of a teddy bear.  Indeed, at the level of protected expression, the authors represent those features in noticeably different ways.  The Baby Buddies bear has three identical black dots that represent the eyes and nose; the Toys R Us bear has two larger, golden dots representing the eyes and a still larger golden dot representing its nose.  The Baby Buddies bear's eyes are positioned on the top third of the bear's face and are spaced more widely apart from each other and from the nose than are the Toys R Us bear's eyes, which sit on the vertical center of the face.  This positioning gives the Toys R Us bear's face a cramped appearance.

20

Both bears have cheeks that protrude from the face, but the Baby Buddies bear's cheeks are separated from each other by a raised muzzle. The Toys R Us bear lacks a distinct muzzle and instead has one continuous, raised feature generally representing its cheeks and muzzle. The Toys R Us bear has a simple line in the shape of an upturned smile carved into the raised portion representing its cheeks. The Baby Buddies bear has a distinct lower lip carved below the muzzle, forming a partly open, smiling mouth.

The bears' bodies are also distinct in their expressive elements. While both bears have upper and lower paws attached to a torso, those features are standard to the idea of a teddy bear and not themselves protectable. The Baby Buddies bear's torso is all white and is curved such that the bear appears to have a "pot belly." The Toys R Us bear's torso is flatter and features a red heart set against a white background. The Baby Buddies bear's upper paws face inward and fold over and rest on its stomach. The paws are entirely white and each has two notches carved into it, creating three digits representing the bear's toes. A close look reveals a raised sculpted element near the bear's shoulder, which represents the part of the leg above the joint. The Toys R Us bear has two white circles representing its upper paws. They stick outward from the bear's sides, rather than resting on the bear's stomach; they face outward, not inward; and instead of carved notches, they

21

have three small gold dots representing either the bear's toes or claws and a slightly larger dot representing the pad of the foot. The Toys R Us bear's upper paws lack anything representing a joint. The Baby Buddies bear's lower paws face outward as though the bear were seated with its legs sticking straight out toward the viewer. The paws again have two notches carved into each of them, creating three toes on each lower paw. The toes also appear to be curling inward. Each lower paw has a raised surface representing the pad of the paw, which is the same aquamarine color as the ribbon used in the pacifier holder. The Toys R Us bear's lower paws lack the detail found on the Baby Buddies bear's paws. The Toys R Us bear's lower paws, like its upper paws, are simple white circles with three gold dots representing toes or claws and a slightly larger gold dot representing the pad. The circles representing the paws extend out to the side of and below the bear's torso, which makes it unclear whether the Toys R Us bear is seated with its paws facing out toward the viewer or is standing with its toes represented in a fanciful, anatomically incorrect position.

The Baby Buddies bear measures approximately one-and-one-quarter inches tall, whereas the Toys R Us bear is approximately one-and-one-half inches tall—a noticeable difference at this scale. The Baby Buddies bear is a flatter shade of white, whereas the Toys R Us bear appears glossy.

Overall, these features combine to create distinctly different bears from an aesthetic perspective. The Baby Buddies bear is smaller, is more finely sculpted, and has more clearly defined anatomical features such as a muzzle, toes, and paw pads, giving it a more refined appearance overall. The Toys R Us bear, with its larger size, fewer details, and cruder representations of anatomical features, has a distinctly abstract, cartoon-like, and almost bloated appearance. No properly instructed juror could find these bears substantially similar.

2.

Baby Buddies contends that its copyright, in addition to covering the bear, should protect the ribbon bow and the overall arrangement of the ribbons and bear. Conceivably, a bow could receive copyright protection, but the Baby Buddies bear falls short of even the low threshold of originality required for copyright protection. See Feist Publ'ns, Inc., 499 U.S. at 345, 111 S. Ct. at 1287. The bow is very simple, consisting of aquamarine-colored ribbon crossed to form a compressed "X" shape that is wider than it is tall. The top two arms of the bow are loops and the bottom two arms are left loose. This bow design is commonplace and not original to Baby Buddies; it existed long before Baby Buddies chose to include it on its pacifier holder. Moreover, even if it were protected, the Toys R Us bow is different, especially given the very few design decisions that go into

23

creating the bow: it is constructed the same way, but it is larger, the ribbon is longer, the pieces form a nearly perfect "X" shape, and it is a lighter shade of blue-green.

The Toys R Us pacifier holder does not infringe the Baby Buddies pacifier holder if we consider the arrangement of the bear and the ribbon. The placement of the sculpted teddy bear at the end of the tether—where the pacifier holder is clipped to the baby's clothing—is driven by function: placing it at the other end of the tether would interfere with the pacifier, and placing the bear somewhere along the tether would make the pacifier holder unwieldy. Additionally, even though the decorative bows on both pacifier holders are placed behind the bears, their similarity ends there. The Baby Buddies bow extends out from the side of the bear—the top arms of the bow emanate almost sideways from just below the bear's ears and the lower arms of the bow stick out from behind the bear's upper paws. On the Toys R Us bear, the top arms of the bow extend upward at a 45 degree angle from where the bear's shoulders would be, and the bottom arms of the bow extend downward at a 45 degree angle from below the bear's lower paws.

In fact, there are almost no similarities between the two pacifier holders beyond the general ideas of including a teddy bear (with the requisite ears, eyes, nose, mouth, arms, and legs), a ribbon bow, and a pastel-based color scheme on a

24

baby's pacifier holder.  Any reasonable jury, properly instructed, would pick up on these differences and their cumulative effect on the noticeably different aesthetics embodied in the two pacifier holders.  Because no reasonable jury could conclude that the pacifier holders are substantially similar at the protected level, the district court properly granted Toys R Us's motion for summary judgment on the copyright infringement count.[18]

We step back for a moment to observe that if someone copies the particular expressive elements from Baby Buddies's pacifier holder, Baby Buddies can of course invoke copyright protection and try an infringement case before a jury.  That is not this case, though.  Baby Buddies is trying to invoke the protection of the copyright laws to prevent a competitor from using the idea of putting a sculpted teddy bear and a color-coordinated bow on a ribbon tether to create an aesthetically appealing pacifier holder.  But this type of creative competition is entirely consistent with the copyright laws.  Baby Buddies has the right to prevent others from copying its creative expression, but not from expressing similar ideas differently.  If Baby Buddies has found the most appealing way to express its idea,

---

[18] Baby Buddies also argues on appeal that the district court erred in denying its motion to strike the Michauds' expert report.  See supra note 9 and accompanying text.  Because the Michauds' report does not aid Baby Buddies by creating a triable issue of material fact, we did not consider it in our analysis, and we need not reach the issue because it would not affect our disposition of this appeal.

the marketplace will reward it accordingly.

IV.

Finally, we turn to Baby Buddies's claim that Toys R Us violated Fla. Stat. §

817.41, which prohibits misleading advertising,[19] by including the © symbol on its

pacifier holder's packaging to indicate that Toys R Us was the author of the

design[20] when, according to Baby Buddies, Toys R Us knew that it had

appropriated the design from Baby Buddies.  We can quickly dispose of this

argument.  As both parties recognize in their briefs on appeal, Baby Buddies can

---

[19] Subsection 1 of the statute, which is the subsection relevant to Baby Buddies's claims, reads:

> It shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement.  Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses.

Fla. Stat. § 817.41(1).  As it relates to the statutory scheme,

> [t]he phrase "misleading advertising" includes any statements made, or disseminated, in oral, written, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services.

Id. § 817.40(5).

[20] Registration with the Copyright Office is permissive; it is not required before adding the © symbol on a work that qualifies for copyright protection.  See 17 U.S.C. § 408(a).  A work must be registered with the Copyright Office before a party may institute a copyright infringement action.  See 17 U.S.C. § 411(a).

26

only succeed on this claim if the Toys R Us pacifier holder design infringes Baby Buddies's copyright. Given that summary judgment is appropriate on the issue of infringement, Baby Buddies cannot succeed on its misleading advertising claim. Therefore, the district court properly granted summary judgment for Toys R Us on Count II.

V.

For the foregoing reasons, the district court's judgment is AFFIRMED.[21]

---

[21] As noted in part I.B, supra, as part of the joint motion to enter a final judgment as to Counts I and II under Fed. R. Civ. P. 54(b), the parties moved and the district court agreed to stay proceedings on Count III pending this appeal, and Baby Buddies further stipulated that it would move to voluntarily dismiss Count III with prejudice if the district court's judgment were affirmed on appeal.

## Appendix A



Appendix B

