UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BABY BUDDIES, INC.,

      Plaintiff,

v.                                          Case No. 8:03-cv-1377-T-17MAP

TOYS "R" US, INC., *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

    After obtaining summary judgment in its favor, as well as affirmance on appeal, Defendants Toys "R" Us, Inc., Toys "R" Us-Delaware, Inc. and Geoffrey, Inc. (collectively "TRU") seek an award of attorney's fees in the amount of $755,434.97 against Plaintiff Baby Buddies, Inc. ("Baby Buddies") arising out of the litigation and appeal of the copyright infringement and misleading advertising claims brought by Baby Buddies (doc. 115). Baby Buddies opposes TRU's request for attorney's fees (doc. 120). For the following reasons, I recommend TRU's motion be granted in part and TRU be awarded attorney's fees in the amount of $604,347.98.[1]

    *A. Background*[2]

    In 1985, Darlene Krause endeavored to make a homemade pacifier holder for her new baby after finding the available pacifier holders unattractive. Initially, she bought a small, fuzzy bear resembling a teddy bear from a craft store to which she affixed a clip and attached a colorful ribbon

---

    [1] The district judge referred the matter to me for a Report and Recommendation (doc. 121). *See* 28 U.S.C. § 636 and Local Rule 6.01.

    [2] The factual background is taken mainly from the Eleventh Circuit's opinion on appeal in *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1310-14 (11th Cir. 2010).

for a tether and a matching bow for decoration. Due to the popularity of her homemade pacifier among her friends, Krause and her husband formed Baby Buddies, Inc. in 1986 to produce and sell her pacifier holder. Subsequently, she applied for and obtained a copyright for her design and assigned all rights in the copyright to Baby Buddies.

After selling that design for a couple years, Baby Buddies employed a design and molding firm to create a molded plastic bear, still resembling a teddy bear, to replace the small, fuzzy bear on the original pacifier holder. In 1991, Baby Buddies registered the second design with the United States Copyright Office. Approximately six years later, TRU began carrying the second Baby Buddies pacifier holder selling more than half a million units in its stores. By 1999, however, TRU began to produce and market its own pacifier holder under its private label. For a few years, TRU sold both its and the Baby Buddies pacifier holder. Later, TRU began the process of phasing out the Baby Buddies pacifier holder and, in 2002, completely discontinued selling the Baby Buddies pacifier holder.

Following the discontinuance of the sale of its pacifier holder, Baby Buddies sued TRU alleging copyright infringement (Count I), misleading advertising (Count II), and unfair competition (Count III) (doc. 1). Essentially, Baby Buddies alleged TRU's creation and sale of a pacifier holder with a bear, ribbon and bow infringed upon Baby Buddies copyright and constituted unfair competition. Baby Buddies further alleged TRU's assertion that it was the creator and owner of that design constituted misleading advertising. Amongst other relief, Baby Buddies sought an injunction, actual damages, statutory damages, and punitive damages of not less than $1,000,000.

The parties litigated the case through the completion of discovery. After the close of discovery, TRU filed a motion for summary judgment on Baby Buddies's copyright infringement

2

and misleading advertising claims (doc. 37).  Upon consideration, the district judge granted TRU's

motion for summary judgment as to those claims finding only the plastic molded bear subject to

copyright protection and concluding TRU did not infringe Baby Buddies's copyright nor engaged

in misleading advertising by claiming it was the creator and owner of the TRU pacifier holder (doc.

85).[3]  Following the ruling on summary judgment, the parties jointly requested the Court enter final

judgment on the copyright infringement and misleading advertising claims but stay further

proceedings on Baby Buddies's unfair competition claim pending the resolution of Baby Buddies's

appeal of the judgment on the copyright infringement and misleading advertising claims (doc. 92).

The Court granted the parties request and entered final judgment in favor of TRU on the copyright

infringement and misleading advertising claims and stayed the case as to the unfair competition

claim (docs. 96 & 97).

Baby Buddies then appealed the Court's order granting summary judgment and the judgment

entered in favor of TRU.  *See* doc. 98.  On appeal, the Eleventh Circuit issued a published opinion

affirming the district judge's grant of summary judgment in favor of TRU on both the copyright

infringement and misleading advertising claims.  *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d

1308.  In making that determination, the Eleventh Circuit concluded no reasonable juror could find

substantial similarity between the TRU pacifier holder and the Baby Buddies pacifier holder, so

summary judgment on the copyright infringement claim was appropriate.  *Id.* at 1319-20.  Based on

its finding that summary judgment was appropriate on the issue of copyright infringement, the

---

[3]  In addition, the district judge declined to address TRU's motion for summary judgment
as to a counterclaim for invalidity given her prior ruling denying TRU leave to file a
counterclaim after the conclusion of discovery.  Accordingly, in her summary judgment order,
the district judge denied without prejudice TRU's motion for summary judgment on its claim for
invalidity (*id.*).

Eleventh Circuit found Baby Buddies could not succeed on its misleading advertising claim and summary judgment was therefore properly granted on that claim as well.

After the Eleventh Circuit issued its opinion, TRU filed a motion with the Eleventh Circuit to transfer the issue of attorney's fees back to this Court. The Eleventh Circuit granted that motion (doc. 111) and TRU filed the instant motion seeking attorney's fees for both the litigation and appeal of this matter (doc. 115).

*B. Discussion*

*1. Entitlement to Attorney's Fees*

Generally, under the "American Rule" employed in the United States, the prevailing party in litigation may not collect its attorney's fees from the losing party and must, instead, bear its own attorney's fees. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001). One notable exception to the American Rule exists where explicit statutory authority provides for the prevailing party to recover its fees. *Id.* In the case at hand, TRU requests an award of attorney's fees under 17 U.S.C. § 505 on the copyright infringement claim and under Section 817.41, Florida Statutes, on the misleading advertising claim. Each of these statutes explicitly provides courts with discretion to award a prevailing party attorney's fees. Accordingly, pursuant to these statutes, TRU seeks a total of $755,434.97 in attorney's fees from Baby Buddies. More specifically, TRU seeks $553,523.49 for matters occurring before the district court during the litigation of Baby Buddies's claims and $201,911.48 for the appeal filed by Baby Buddies.

*a. 17 U.S.C. § 505*

Under the Copyright Act, the court may award costs, including reasonable attorney's fees,

4

to the prevailing party in a copyright infringement suit.  17 U.S.C. § 505.[4]  For purposes of § 505, courts must treat prevailing plaintiffs and prevailing defendants alike and only award a prevailing party attorney's fees as a matter of the court's discretion.  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).  In determining whether to award a prevailing party attorney's fees, courts should not award fees as a matter of course but rather consider such non-exclusive factors as frivolousness, motivation, objective unreasonableness both factually and legally, and the need to advance considerations of compensation and deterrence.  *Id.* at 534 n.19.  Courts must apply these factors in a manner "faithful to the purposes of the Copyright Act," *i.e.*, to encourage "the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure 'that the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works."  *MiTek Holdings, Inc. v. Arce Engineering Co., Inc.*, 198 F.3d 840, 842-43 (11th Cir. 1999)(quoting *Fogerty*, 510 U.S. at 526-527).

### *i.  Prevailing Party*

To be entitled to attorney's fees under § 505, TRU must constitute the prevailing party.  As TRU prevailed on summary judgment, and again on appeal, on the copyright infringement claim, it is indisputably the prevailing party in this matter.  Baby Buddies does not argue to the contrary.  Yet, although TRU constitutes the prevailing party, the inquiry does not end there.  The Court must now determine whether the *Fogerty* factors weigh in favor of granting TRU attorney's fees.

---

[4] Section 505 provides, "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  *Id.*

*ii.  Frivolousness and Objective Unreasonableness*

TRU contends Baby Buddies claims were frivolous and unreasonable for the following reasons: Baby Buddies attempted to use copyright law to protect an idea, to protect utilitarian elements, and to protect the clear unoriginality of the ribbon bow; Baby Buddies claimed infringement of the first copyright when Baby Buddies admitted TRU did not have access and claimed infringement by TRU's obviously non-infringing teddy bear sculpture; Baby Buddies delayed pursuit of its claims for three years after learning of the TRU pacifier holder; and Baby Buddies failed to introduce expert testimony regarding the issue of substantial similarity.  Baby Buddies argue that its claims were justified because it had valid and enforceable copyrights, TRU created a similar pacifier holder possibly based on Baby Buddies's design, some confusion existed in the marketplace as to the two pacifier holders, and both the district and appellate courts considered the merits of Baby Buddies's claims for an extended duration.

Initially, "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected.  Originality remains the *sine que non* of a copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 348 (1991) (citations omitted).  Here, Baby Buddies obtained copyrights for both of its pacifier holders.  Though Baby Buddies contends it had valid and enforceable copyrights, the issue of invalidity was never addressed in this Court or on appeal.  Indeed, TRU only conceded the copyrights were valid for the limited purpose of the infringement analysis in its summary judgment motion.  *See* doc. 85, p. 6.  Irrespective, as the summary judgment order and Eleventh Circuit opinion indicate, the only original element of the Baby Buddies pacifier holder, and thus the only element worthy of copyright protection, was the

sculpted bear.  All the other elements Baby Buddies sought to protect on its pacifier holder either constitute utilitarian elements (*i.e.*, the ribbon tether, clip, and snap) or are simply too generic and unoriginal for copyright protection (*i.e.*, the ribbon bow).  Accordingly, Baby Buddies's pursuit of its claims relating to those elements of the pacifier holder were frivolous and objectively unreasonable.

Further, as to any claims relating to the first copyright, Baby Buddies conceded TRU had no access to the original pacifier holder (doc. 57, Exh. 5, Deposition of Phil Krause, p. 61).  As a result, Baby Buddies was required to show "striking similarity" between the protectable elements of the original Baby Buddies pacifier holder and the TRU pacifier holder.  In her order granting summary judgment, the district judge found that Baby Buddies's *own* testimony established the complete lack of similarity between the original Baby Buddies pacifier holder and TRU's pacifier holder (doc. 85, p. 7).  Given Baby Buddies's admission that the original pacifier holder and the TRU pacifier holder were completely dissimilar, any infringement claims relating to the first copyright were frivolous and objectively unreasonable, both factually and legally.

Moreover, as to the second copyright, "there are almost no similarities between the two pacifier holders beyond the general ideas of including a teddy bear (with the requisite ears, eyes, nose, mouth, arms, and legs), a ribbon bow, and a pastel-based color scheme on a baby's pacifier holder."  *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d at 1320.  As articulated by both the district judge and the Eleventh Circuit, ideas cannot be copyrighted; rather, the particular expression of those ideas may be copyrighted.  *See* doc. 85, p. 5; *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d at 1316.  *See also* 17 U.S.C. § 102(b).  In this instance, the Eleventh Circuit made clear that Baby Buddies essentially sought copyright protection of its idea of a pacifier holder with a bear,

ribbon tether and decorative bow rather than the particular expression of that idea. Upon reaching

its conclusion that TRU did not infringe Baby Buddies's copyright for its pacifier holder, the

Eleventh Circuit stated

> We step back for a moment to observe that if someone copies the particular expressive elements from Baby Buddies's pacifier holder, Baby Buddies can of course invoke copyright protection and try an infringement case before a jury. That is not the case, though. Baby Buddies is trying to invoke the protection of the copyright laws to prevent a competitor from using the idea of putting a sculpted teddy bear and a color-coordinated bow on a ribbon tether to create an aesthetically appealing pacifier holder. But this type of creative competition is entirely consistent with the copyright laws. Baby Buddies has the right to prevent others from copying its creative expression, but not from expressing similar ideas differently. If Baby Buddies has found the most appealing way to express its idea, the marketplace will reward it accordingly.

*Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d at 1320-21. Although TRU conceded access to

the second pacifier holder and appears to have used Baby Buddies's *idea* of a pacifier holder with

a bear, ribbon and bow in designing its own pacifier holder, no similarity exists beyond that idea.

Baby Buddies's pursuit of copyright protection for its idea rather than any original expression of that

idea was, therefore, frivolous and objectively unreasonable in light of well-settled legal precedent.

For the foregoing reasons, the first two *Fogerty* factors weigh in favor of an award of attorney's fees

to TRU.[5]

### iii. Motivation

The next factor the Court must consider involves Baby Buddies's motivation in pursuing its

---

[5] Baby Buddies focuses much of its argument on the duration of the proceedings as indicative of the non-frivolous nature of its claims. Although in some instances that may be the case, the argument is particularly unpersuasive in this instance. As the district judge's summary judgment order explains, for example, any delay in disposition of pending motions stemmed from the demands of the Court's criminal docket rather than the merits of this Baby Buddies's claims (doc. 85, p. 2).

8

claims.  According to TRU, the Court should infer improper motivation given Baby Buddies delay in filing the instant action.  As Baby Buddies admitted, it first learned of TRU's pacifier holder in 2000 (doc. 116, Exh. 11, Deposition of Phil Krause, p. 117).  Instead of filing its complaint at that time, Baby Buddies acquiesced to TRU's sale of its own line of pacifier holders for three years before bringing the instant lawsuit.  It was not until almost a year after TRU entirely discontinued selling Baby Buddies's pacifier holder, thereby eliminating Baby Buddies's primary retailer and largest customer, that Baby Buddies decided to assert any purported legal rights related to its pacifier holder.  In fact, Baby Buddies's decision to file the instant lawsuit against TRU in 2003 stemmed not from a need or desire to protect any potential copyright interests but rather directly from its "business [having] been so greatly affected by the loss of sales from Toys 'R' Us that we felt [filing the lawsuit] was the only thing we could do at that point" (*id.*, p. 124).  It appears extremely likely, then, that Baby Buddies filed the instant lawsuit in an attempt to oust TRU as a competitor from the pacifier holder marketplace or to receive a large settlement payment as vindication for the loss it purportedly suffered after TRU discontinued selling the Baby Buddies pacifier holder and began providing legitimate competition in the pacifier holder market.

Given the overarching posture of this case, it appears most likely that Baby Buddies was motivated by the potential for a large damages recovery from TRU.  By its complaint, Baby Buddies sought *at least* $1,000,000 in punitive damages alone, not to mention its claims for actual damages, statutory damages, and lost profits.  Instead of filing a lawsuit in 2000 to minimize the loss incurred by what it perceived as an infringing pacifier holder, Baby Buddies elected to file the lawsuit nearly three years later after TRU had saturated the market with its own pacifier holder.  This delay provided Baby Buddies an opportunity to increase any damages award to include any lost profits

during that period.  Accordingly, based on the delay in filing the instant lawsuit, Baby Buddies's

motivation appears at least questionable if not improper.  *See Lil' Joe Wein Music, Inc. v. Jackson*,

No. 06-20079-CIV, 2008 WL 2688117, *6 (S.D. Fla. July 1, 2008) ("[T]he undersigned finds that

Plaintiff's motivation in filing this case was at least questionable, if not improper or in bad faith, as

Plaintiff waited for almost three years after the songs at issue were released before filing this case,

while during that period Defendants spent large sums to exploit the songs.").  Rather than attempting

to further any interests protected by the Copyright Act, Baby Buddies appears to have focused its

sights on a multi-million dollar payout from TRU.  Thus, as Baby Buddies's motivation for bringing

this action appears at least questionable, this factor weighs heavily in favor of granting TRU

attorney's fees.

### iv. Considerations of Compensation and Deterrence

The final *Fogerty* factor requires the Court to consider whether imposition of attorney's fees

would advance considerations of compensation or deterrence.  Here, TRU spent the better part of

seven years, both at the district and appellate levels, defending itself from Baby Buddies's claims.

At the start of this action and continuing through the district judge's order on summary judgment,

which Baby Buddies subsequently appealed, TRU faced the unenviable situation of having to

rigorously defend itself against a potential multi-million dollar judgment against it or settle claims

which had no merit.  During that time, TRU paid its counsel nearly $1 million in attorney's fees to

protect its interests and defend itself from numerous frivolous and unreasonable claims.  As the

Supreme Court has stated, "defendants who seek to advance a variety of meritorious copyright

defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to

litigate meritorious claims of infringement."  *Fogerty*, 510 U.S. at 527.  Given TRU's meritorious

defenses in defending this action, awarding attorney's fees to TRU would substantially promote considerations of compensation.

Notwithstanding, Baby Buddies argues an award of attorney's fees in this instance would do nothing to deter improper conduct because Baby Buddies has not engaged in such.  As Baby Buddies's motivation for bringing this action was at best questionable and many of the claims brought and litigated were frivolous and unreasonable, this argument lacks merit.  An award of attorney's fees in this instance would deter future plaintiffs from seeking a windfall payout from a deep-pocket defendant who provides legitimate competition.  On the other hand, an award of fees would not excessively chill future lawsuits based on objectively reasonable copyright infringement claims.

Regardless, Baby Buddies hints that an award of attorney's fees would be futile because Baby Buddies is now a defunct operation and cannot afford to pay a mammoth fee award.  Under this factor, however, courts do not consider whether the losing party can afford to pay the fees but rather whether the imposition of fees furthers the goals of the Copyright Act.  *MiTek Holdings*, 198 F.3d at 843.  As noted, an award of attorney's fees in this case would further the goals of the Copyright Act by encouraging defendants to mount meritorious defenses to copyright infringement claims which would thereby aid in establishing and demarcating the boundaries of copyright infringement and in enriching the public through access to creative works.  *See generally Amadasun v. Dreamworks, LLC*, 359 F. Supp. 2d 1367, 1376 (N.D. Ga. 2005) (citing *Fogerty*, 510 U.S. at 527) ("The Court recognizes that a prevailing defendant's successful defense against a copyright claim aids in establishing the boundaries of infringement and furthers the purpose of 'enriching the general public through access to creative works.'").  Accordingly, this factor weighs in favor of an award of

11

attorney's fees to TRU.

### v. Other Factors

The *Fogerty* factors provide a non-exclusive list for the Court to consider in awarding attorney's fees to a prevailing party under the Copyright Act.  Indeed, the Court may also consider the fact that TRU achieved complete success on Baby Buddies's copyright infringement claims in this action as further support for an award of attorney's fees.  *See Lil' Joe Wein Music, Inc.*, No. 06-20079-CIV, 2008 WL 2688117 at *5.  Namely, the district court granted summary judgment on the copyright infringement and the Eleventh Circuit upheld summary judgment on appeal.[6]  Accordingly, this factor strongly supports an award of attorney's fees to TRU.

### vi. Balance of Factors

After consideration of the *Fogerty* factors, the balance weighs in favor of granting TRU attorney's fees.  Under 17 U.S.C. § 505, TRU should be entitled to an award of its reasonable attorney's fees.

### c. Fla. Stat. § 817.41

Similarly, under Section 817.41, Florida Statutes, a party prevailing in a civil action for violation of Florida's misleading advertising statute may obtain an award of costs, including reasonable attorney's fees.  Fla. Stat. § 817.41(6).[7]  Given the district judge's grant of summary judgment on the misleading advertising claim, and affirmance on appeal, TRU is also the prevailing

---

[6]  TRU attempted to assert a counterclaim for copyright invalidity which the Court denied without prejudice.  TRU has conservatively reduced the number of hours requested to account for time spent on that issue.

[7]  The statute provides in relevant part: "Any person prevailing in a civil action for violation of this section shall be awarded costs, including reasonable attorney's fees ....  This provision is in addition to any other remedies prescribed by law."  Fla. Stat. § 817.41(6).

party for purposes of Section 817.41, Florida Statutes. Therefore, for the reasons set forth above, TRU should be entitled to attorney's fees under this provision as well.

### 2. Amount of Attorney's Fees

After determining TRU's entitlement to an award of attorney's fees, the Court must determine a reasonable amount of fees to award TRU. In fashioning an attorney's fee award, both the Eleventh Circuit and the Florida Supreme Court apply the "lodestar" method wherein the court multiplies the number of hours reasonably expended by a reasonable hourly rate. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988); *Fla. Patient's Comp. Fund v. Rowe*, 472 So.2d 1145, 1150 (Fla. 1985) (adopting the federal lodestar approach). When calculating the lodestar, courts in the Eleventh Circuit are guided by the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989). *See Norman*, 836 F.2d at 1299 (noting the *Johnson* factors may still "be considered in terms of their influence on the lodestar amount."); *see Loranger v. Stierheim*, 10 F.3d 776, 781 n.6 (11th Cir. 1994) (stating "[a]lthough its balancing test has since been displaced by the lodestar formula, we have expressed our approval of district courts considering the *Johnson* factors in establishing a reasonable hourly rate."); *see Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1352 (11th Cir. 2008) ("The *Johnson* factors are to be considered in determining the lodestar figure; they should not be reconsidered in making either an upward or downward adjustment to the lodestar - doing so amounts to double-counting."); *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (noting many of the *Johnson* factors "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."). These factors include: (1) the time and labor expended; (2) the novelty and difficulty of the questions presented; (3) the skill required to

13

properly perform the legal services rendered; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[8] *Johnson*, 488 F.2d at 717-19.

### a. Hourly Rate

A "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299; *see Rowe*, 472 So.2d 1151 (finding the prevailing market rate is "the rate charged in the community by lawyers of reasonably comparable skill, experience and reputation, for similar services."). Generally, the location where the case is filed constitutes the "relevant market" for determining the reasonable hourly rate. *American Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). To recover non-local rates for an attorney who is not from the place the case was filed, a fee applicant "must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id.* A prevailing party "is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate." *Id.* In this context, "market rate" means the hourly rate charged in the local legal market by an attorney with expertise in the area of law who is willing and able to take the case, if indeed such an attorney exists. *Id.* The fee applicant

---

[8] In Florida, courts consider a nearly identical list of factors in determining reasonable attorney's fees. *Rowe*, 472 So.2d at 1150 & n.5.

bears the burden of establishing the requested rates are in line with the prevailing market rates by producing direct evidence of rates charged in similar circumstances or opinion evidence of reasonable rates. *Norman*, 836 F.2d at 1299; *Rowe*, 472 So.2d at 1151. Those opposing the fee petition should be reasonably precise in their objections. *Id.* at 1301. Here, Baby Buddies failed to meaningfully reply to TRU's motion with any specific objections. Nonetheless, the Court has abided by the Eleventh Circuit's admonition that district courts "are not authorized to be generous with the money of others, and it is as much the duty of the courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Barnes*, 168 F.3d at 428.

Here, TRU employed both local counsel and New York counsel to litigate this matter at the district and appellate levels. As to its local counsel, TRU seeks hourly rates of $350-$475 for work performed by the partner and rates of $170-$260 for work performed by the associate. These rates are at or slightly above the customary fees sought and obtained in the Middle District of Florida, *see e.g.*, *Corwin*, 6:02-cv-1377-Orl-19KRS, 2008 WL 754697 at * 27, adopted at 6:02-cv-1377-Orl-19KRS, doc. 357, but appear reasonable in light of the experience, reputation, and ability of the attorneys. *See* doc. 115, Declaration of Charles F. Ketchey. Though local counsel's fees appear reasonable, local counsel accounted for less than ten percent of the total hours billed and the total fees charged. *See* doc. 116, Declaration of Robert S. Weisbein, p. 11.

The vast majority of fees billed and requested are attributable to TRU's New York counsel. According to TRU, it employed its primary outside intellectual property counsel from New York because of their significant litigation experience and lengthy history with TRU and to avoid inefficiencies with having to familiarize local counsel with TRU, its business, and the matters at issue in the instant litigation (doc. 115, p. 22). TRU asserts the two main New York partners, Fields

15

and Weisbein, had represented TRU in a variety of intellectual property matters for approximately twenty-five years at the inception of the instant litigation. *See* doc. 116, Declaration of Robert S. Weisbein, ¶¶ 2-3. TRU concedes, as it must, however, that there is no lack of attorneys practicing in the Middle District of Florida who are willing and capable to handle its claims (*id.*, p. 27). *See Barnes*, 168 F.3d at 437. Indeed, TRU employed competent and well-respected local counsel to assist its New York counsel with the litigation of this action. Accordingly, TRU is not entitled to non-local rates for its New York counsel.

Rather than adopting local counsel's hourly rates, TRU has tabulated the actual rates billed by each timekeeper as well as listed the third quartile rate for New York and Southeastern Metro intellectual property attorneys, as compiled by the American Intellectual Property Law Association (AIPLA) in an effort to obtain a reasonable hourly rate for its New York counsel. Where the actual rate billed by counsel was higher than the seventy-fifth percentile AIPLA rate, TRU calculated the fee request at the lower rate (doc. 115, p. 19). Even when adjusted to the AIPLA Southeastern Metro rates sought by TRU, however, the rates charged by New York counsel exceed the rates charged by local counsel by up to fifteen percent in some instances.[9] Indeed, TRU seeks $350-$513 for work performed by the partners and rates of $185-$400 for work performed by the associates.[10]

---

[9] TRU does not explain why it believes the higher seventy-fifth percentile AIPLA rate applies rather than the median percentile AIPLA rate. *See generally* Declaration of Robert S. Weisbein, Exh. C (AIPLA rate charts). The rates of local counsel more closely align with the median percentile AIPLA rates for the Metro Southeastern region and, therefore, more likely represent a reasonable fee award.

[10] It should be noted that, in seeking fees related to work completed by the paralegals for New York counsel, TRU made an across-the-board reduction of the hourly fee requested from $165-$205 to $100 for each. The $100 hourly rate comports with hourly rates awarded for the work of paralegals in similar cases. *See, e.g., Lil' Joe Wein Music*, No. 06-20079-CIV, 2008 WL 2688117 at *13.

Accordingly, the hourly rates requested by TRU for its New York counsel are unreasonable as they exceed the prevailing market rates and should thus be reduced.

Consideration of the *Johnson* factors does not warrant a different conclusion.  Admittedly, the field of intellectual property litigation is specialized and requires a great amount of skill to navigate the legal landscape.  With twenty-five to thirty-five years of experience each, respectively, the three partners employed by TRU throughout the litigation and appeal possessed the requisite skill, knowledge, and ability to properly defend TRU in this action.  *See* doc. 116, Declaration of Robert S. Weisbein, Declaration of Charles F. Ketchey, and Declaration of C. Douglas McDonald. Collectively, the TRU legal team successfully defended claims for injunctive relief and millions of dollars in damages in both the district and appellate courts.  To that end, they achieved complete success on all the claims brought by Baby Buddies.  These factors weigh in favor of awarding TRU a *reasonable* fee but do not warrant the inflated fee requested by TRU.

In fact, the remaining *Johnson* factors weigh against the elevated rates sought by TRU. Notably, the attorneys were not precluded from other employment due to acceptance of this case, the fees were not contingent, no time limitations affected the representation based on the client or circumstances of the case, and the case was not undesirable.  More importantly, the customary fees charged in the Middle District of Florida are up to fifteen percent less than the adjusted hourly rate sought by TRU as indicated by awards in similar cases.[11]  Furthermore, TRU repeatedly asserts the

---

[11]  In support of its fee petition, TRU includes the Declaration of C. Douglas McDonald, a local attorney with extensive intellectual property litigation experience, who attests to the reasonableness of the overall fee request.  *See* doc. 116, Declaration of C. Douglas McDonald. Though McDonald asserts the overall fee request is reasonable, he never enunciates a reasonable hourly rate to be charged by the attorneys.  Besides the charts listing the AIPLA rates for the relevant years, the only other evidence TRU offers of a reasonable hourly rate consists of the declarations of the attorneys who litigated the case.  These affidavits are not sufficient for TRU

claims brought by Baby Buddies were frivolous, objectively unreasonable and obviously without merit such that TRU is entitled to an award of fees. To then argue that Baby Buddies's claims presented novel and difficult issues is at the very least incongruous. After consideration, therefore, the balance of the *Johnson* factors weighs in favor of a reduction in the requested hourly rate. Based on the foregoing, the hourly rates requested by TRU for the vast majority of its fees are not reasonable and should be reduced as detailed in Section *B.2.c.*

### b. Hours Expended

Next, the Court must ascertain the number of hours reasonably expended by TRU on the litigation and appeal of this matter. In seeking fees, the fee applicant must exclude any excessive, redundant or otherwise unnecessary hours from the amount claimed. *Norman*, 836 F.2d at 1301. Indeed, the fee applicant has to exercise "billing judgment." *Id.* Namely, the applicant must exclude those hours which would be unreasonable to bill a client and, therefore, to one's adversary regardless of the skill, reputation or experience of counsel. *Id.*; *Rowe*, 472 So.2d at 1150 ("Counsel is expected, of course, to claim only those hours that he could properly bill to his client."). TRU contends it has exercised sufficient billing judgment by its fee request because it has reduced the hours billed from the years 2003 and 2004 by six percent to conservatively account for time spent on the common law unfair competition claim for which attorney's fees are not available as well as reduced the number of hours billed during 2004 by fifty-five hours to conservatively account for time spent on the portion of its summary judgment dedicated to the counterclaim for invalidity, which this Court denied

---

to meet its burden of establishing a reasonable fee. As the Eleventh Circuit has made plain, the applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates, which, at a minimum, means more than the affidavit of the attorney performing the work. *Norman*, 836 F.2d at 1299.

without prejudice (doc. 115, pp. 19-20).  It has further reduced its hours by excluding timekeepers who worked fewer than fifteen hours on this matter (*id.*).  Given these reductions, TRU requests fees for 2,546.16 total hours rather than the 2,731.20 hours actually billed.  *See* doc. 116, Declaration of Robert S. Weisbein, pp. 9-11.  Baby Buddies does not make specific objections to any time entries but instead generally asserts that the fee petition is excessive and unnecessary (doc. 120, pp. 18-19).

Having reviewed the record, the number of hours expended by counsel appears inflated.  The number seems especially troubling upon review of the procedural posture of this case.  Here, the main claims litigated from the inception of the case through issuance of the mandate by the Eleventh Circuit involved the copyright infringement and misleading advertising claims, with the bulk of the litigation and appeal pertaining to issues of infringement.  Prior to filing the motion for summary judgment, the parties did not engage in extensive motion practice before the Court and only conducted approximately one year of discovery.  Following the close of discovery, TRU solely moved for summary judgment and the Court granted the motion on the papers without the need for a hearing.  At that time, only the unfair competition claim remained for trial, but, after the Court granted the parties' request to stay the action as to that claim, none of the claims ever proceeded to trial.  Subsequently, Baby Buddies appealed only the order granting summary judgment and the judgment entered as a result.  By doing so, Baby Buddies necessarily limited the issues on appeal to those raised in the summary judgment motion.  Though TRU may have had to cite some further authority for its position on appeal, the legal research and analysis should already have been predominantly completed at that point.  This procedural history alone makes TRU's request for $553,523.49 for matters occurring before the district court and $201,911.48 in appellate fees appear excessive.  *See, e.g., Corwin v. Walt Disney World Co.*, 6:02-cv-1377, 2008 WL 754697 (M.D. Fla.

March 18, 2008), adopted at 6:02-cv-1377-ORL-19KRS, doc. 357 (reducing a requested award of appellate fees to $125,000 for an appeal filed in 2006 arising out of a copyright infringement claim which the district court decided on summary judgment and the Eleventh Circuit affirmed on appeal).

Furthermore, a quick review of the time records reveals multiple redundancies in billing. For example, both local counsel and New York counsel billed TRU for a telephone conversation occurring on December 18, 2008, between the two offices and again each billed for e-mail correspondence on August 31, 2010, between the two offices. Redundancies such as these must be excluded from any fee award. *Norman*, 836 F.2d at 1301 (finding redundant hours should be excluded from the amount of hours claimed); *see Lil' Joe Wein Music*, No. 06-20079-CIV, 2008 WL 2688117 at *13 (reducing the requested hours claim by defendants' counsel by twenty percent across-the-board where, among other things, multiple attorneys worked on the same task, *i.e.*, a telephone conference); *see Gary Brown & Assocs., Inc. v. Ashdon, Inc.*, 268 Fed. App'x 837, 845 (11th Cir. 2008) (finding no abuse of discretion in upholding a district court's fifteen percent reduction for excessive and redundant time entries).

Moreover, TRU contends it maintained an efficient system for assigning tasks in an effort to minimize fees. Upon review, however, TRU employed three paralegals, seven associates, and two partners in the office of its New York counsel and one partner and one associate in the office of its local counsel. The Court finds it somewhat confusing that TRU required the work of eleven attorneys, three of which are high-level partners, and three paralegals for litigation of claims TRU adamantly contends are frivolous and objectively unreasonable. Given the frivolousness and unreasonableness of many of Baby Buddies's claims, therefore, the time and labor expended should have been minimized. Though TRU believes it created an efficient system, review of the time

records indicates an excessive amount of timekeepers were utilized in this litigation and an excessive amount of time was billed by TRU's counsel both in litigation at the district court level and on appeal. Accordingly, based on the foregoing, a reduction of the number of hours expended is warranted as detailed in Section *B.2.c.*

### c. Reasonable Amount

Given the voluminous nature of the fee petition, the Court is not required to conduct an hour-by-hour analysis to determine reasonableness. *Loranger*, 10 F.3d at 783. Rather, the Court may apply an across-the-board percentage reduction in either the number of hours claimed or in the final lodestar figure, for instance. *Id.* Accordingly, based upon the factors considered above and the Court's own expertise, it is recommended that the Court apply an across-the-board twenty percent reduction to the requested fee amount of $755,434.97, bringing the total award of fees to $604,347.98 for both the litigation and appeal of the copyright infringement and misleading advertising claims. *See Norman*, 836 F.2d 1303 (noting the court is itself an expert on the question of attorney's fees and providing the court with discretion to make a fee award on its own experience where the time or fees claimed seem expanded).

### C. Conclusion

For the foregoing reasons, it is hereby

RECOMMENDED:

1. TRU's motion for an award of attorney's fees (doc. 115) be granted in part.

2. Baby Buddies be required to pay TRU attorney's fees in the amount of $604,347.98.

IT IS SO REPORTED in Tampa, Florida, on August 9, 2011.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).


cc:     The Honorable Elizabeth A. Kovachevich
        Counsel of Record